[No. 1339. Decided July 17, 1894.]

WILLIAM A. L. KOCH, *Respondent*, v. THE SACKMAN-PHILLIPS INVESTMENT COMPANY, *Appellant*.

INJURY TO RESIDENCE LOT — MEASURE OF DAMAGES — EVIDENCE — CROSS EXAMINATION.

Although the principal owner of an addition to the city has been authorized to grade a street therein to the established grade under the supervision of the city engineer, and has let a contract for the entire work under similar terms and stipulations as the city employed in contracts for street improvements, such owner is liable for the damage resulting to a residence lot from the overflow of water, sand, gravel and debris thereon, when the contractors, with his knowledge, in making a large fill across a ravine to bring the street to the established grade, have dumped therein large quantities of "mushy" earth, mixed with water, which would not bank up, but flowed away over the lands lying below the grade of the street.

In an action to recover damages in such a case, the evidence of an engineer that a large part of the damage was due to a heavy rainstorm, is incompetent, when the witness had not seen the place before the injury, and gave no facts upon which he based his opinion.

In such an action, an instruction states the proper measure of damages when it charges the jury that the amount of the recovery would be such an amount as would put the premises in as good condition as they were in before the gravel and debris was washed

upon them, making allowance for such benefits as the premises may have received from the deposit of gravel, etc., upon them.

The refusal to permit further cross examination, after a subject has once been gone into on cross examination and dropped, is not prejudicial error.

*Appeal from Superior Court, King County.*

*Jenner, Legg & Williams,* for appellant.
*Arthur, Lindsay & King,* for respondent.

The opinion of the court was delivered by

Stiles, J.— The complaint alleged that the defendants had wrongfully caused a quantity of water, sand, gravel, rocks and debris to overflow and settle upon plaintiff's lots in the city of Seattle to his damage.   Whereupon the Sackman-Phillips Investment Company answered affirmatively to the following effect: It was the owner, with one Colman, of all the lots fronting on all the streets, save one, in the Twelfth avenue addition, the said streets having been fully dedicated to the public.   Desiring to have these streets graded it procured the passage of ordinance 2196, by which it and Colman were authorized to grade the streets at their own expense, under the supervision of the city engineer, and in accordance with plans and specifications to be prepared by him, which were required to comply with the established grade.   A contract was then let to the other defendants, Taylor Brothers, for the entire work, the stipulations therein being those required in contracts entered into by the city of Seattle.   Taylor Brothers were thus as nearly independent contractors as the nature of the case would permit.   After alleging that the contractors had performed their work in all respects according to the plans and specifications and the directions of the city engineer, and in a good and workmanlike manner, the answer concluded thus:

"XI. That in the grading of said streets and avenues the said defendants, Taylor Bros., performed said work wholly within the limits of said streets. That in the performance of said work as aforesaid, numerous hidden springs, the existence of which was unknown to this answering defendant, were found, which said springs had no definite course and which with other percolating and surface waters flowed over said streets and avenues naturally and directly, and in no manner was their course directed by any of said defendants, and any and all gravel, sand, rocks, earth and debris which may have been carried upon the premises of plaintiff, as alleged in his complaint, were carried and deposited there by the action of said waters in their natural, ordinary and direct flow, and was done without any negligence, carelessness or fault of this defendant, or of Taylor Bros., so far as this answering defendant is informed.

"XII. That the premises of said plaintiff herein are situated below the grade and in the natural, ordinary and direct flow of all waters from said street, wherein the said streams were struck as hereinbefore alleged."

A demurrer was sustained to the affirmative defense, upon which action error is assigned.

The position taken by appellant is, that under the ordinance authorizing it to grade the streets it assumed no responsibility except that of paying for the work, and that all liability for the injury complained of must rest either with the city or the contractors who were acquitted by the jury. So far as injury might accrue in such a case from the inherent defects of the plan of improvement adopted by the city through its engineer, we think this position would be a sound one as to the city; as, for instance, if the effect of an embankment were to cast surface water upon plaintiff's lots, which had not theretofore had its natural flow in that direction, or if an insufficient drain or culvert were provided where it was plainly necessary that such water should have an outlet. So, also, if the injury were found to have been caused by negligence in construc-

tion, it would seem that although either the city or the contractor might be liable, the appellant would not be, if the facts stated in the answer were true, since the pleading shows a clear instance of an independent contract on the part of Taylor Bros.

The allegations contained in the paragraphs quoted are somewhat vague and indefinite as to what caused the gravel, etc., to be cast upon plaintiff's lots, but we are inclined to view them liberally, as tending to show that the difficulty was either in the plans or in the manner of doing the work. We shall treat the case as though no demurrer had been interposed, and consider each point made on its merits, since no evidence of any materiality under the affirmative defense was rejected, except such as would have presented questions of law only, and the rejected evidence is in the record upon exceptions.

The evidence, however, disclosed a state of facts which did not bear out the appellant's claims.  On the same day that it made its contract with Taylor Brothers for the grading of the streets, it made another contract with the same firm for the grading of a large number of lots. . Each contract provided that Taylor Brothers should furnish the earth necessary for the filling of the low places, but the evidence showed that it was understood that the surplus earth from either streets or lots, indifferently, should be used as filling wherever needed.  Some of the area to be graded consisted of wet lands, there being springs located in them, so that the earth taken therefrom was described as "mushy," and so mixed with water that when dumped into a place that required to be filled up it would not bank up, but flowed away.  One of the places to be filled was in the line of Twelfth avenue, where it crossed a depression thirty or more feet below the level of the grade, and into this place for the period of nearly a month the contractor dumped masses of the mud taken from the wet area.  The ravine

crossed by Twelfth avenue carried a small stream of water which was added to the water already in the dump and probably helped its flow toward respondent's property, which was about three hundred feet from the avenue, and much lower than the avenue at that point. Seeing that the material being used for the filling would not stand in the avenue, appellant procured from the owners of lots between the avenue and respondent's lots the right to let the mud flow down over them. Certain logs, brush or other obstacles checked the flow near respondent's line, and for some time piled up the mud against them; but after a time the whole mass gave way and was thrown over respondent's lots, burying his fences, walks, gardens, etc., and causing the damage complained of.

None of the allegations of paragraphs 11 and 12 of the answer were sustained by any evidence. The claim that appellant and its contractor were acting under authority of the city, while they were casting this quicksand upon respondent's lots, cannot be sustained for a moment. The authority granted was to fill Twelfth avenue, and it was implied that the material used would be something suitable to the purpose, and which would keep up its own weight. But the defendants went clear beyond this authority, and beyond the terms of the contracts between them, and used wholly unfit material and undertook the filling of lots which neither appellant nor Colman owned. Whether the stuff used came from the streets or from appellant's lots does not appear. Undoubtedly the filling of the Booth lots was undertaken as a matter of convenience to the contractors in disposing of the surplus mud, and to assist them in getting a foundation upon which the avenue fill would stand; but it was done with appellant's knowledge and by its procurement. Both of them knew from respondent of the danger that threatened his property, but they paid no attention to him; they were equally responsi-

ble ; and we are only surprised that the jury should have relieved the contractors.

The city engineer Thompson testified that after the damage was done he, at respondent's request, went and looked over the situation, and that in his opinion a large part of the damage was due to a rainstorm which had occurred the day before ; and upon this the court was asked to instruct the jury that if the damage or a large part of it was caused by the elements there could be no recovery.   The witness gave no facts upon which he based his opinion, had not seen the place before while the work was being done, and was not qualified to advise the jury upon the matter ; it was not error, therefore, to refuse to base a charge upon his evidence.

Appellant, having denied respondent's alleged ownership of his lots, after he had stated on cross examination that he purchased them with his separate funds subsequent to his marriage, sought to cross examine him further; whereupon the court refused to allow the inquiry to proceed upon that subject, giving as a reason that it made no difference whether he was married or not.   Perhaps, under the decision in *Parke v. Seattle*, 8 Wash. 78 (35 Pac. 594), it would make a difference in a proper case; but the answer had been taken that the money paid for the lots was respondent's separate money.   The refusal of further cross examination, after the subject had been once gone into and dropped was not reversible error, if it was error at all.

Appellant requested a charge that the measure of damages in this action would be the difference between the value of respondent's premises immediately before and immediately after the sand, gravel and other debris came thereon; but it was refused.   This request stated the general rule of damages to land, where the premises are considered as land only; 3 Sedgwick, Dam. (8th ed.), § 932;

3 Sutherland, Dam. (2d ed.), § 1017; but even in such cases the cost of restoration is sometimes adopted, where the injury is slight and the cost of removing debris, etc., would be less than the decrease in permanent value, if it were not removed.   But where, as in this case, a considerable part of the damage grows out of the destruction of fences, walks, outhouses, trees and shrubbery, upon city residence premises, the bare difference in market value might not, and in this case we think it would not, constitute a just measure of damage at all.   The filling up of the lots with gravel even may have been a large benefit, and some of appellant's witnesses seemed to be of the opinion that it offset all of the damage, and that the property would sell just as well as before.   But while respondent would have to accept such a benefit as against the damage to his mere land, he cannot be compelled to take gravel in lieu of fences, outhouses, etc., which must be replaced at the expense of money to enable him to enjoy the reasonable use of his property.

Many forms of charge which might have been given in such a case would have been proper, and that which was given by the court was one of them, viz., that the amount of the recovery would be such an amount as would put the premises in as good condition as they were in before the gravel, etc., was washed upon them.   Appellant argues upon this instruction as though the jury were allowed to award the cost of restoring the property to its original condition by the removal of the gravel, or the importation of new soil; but it does not warrant this construction. "As good condition" did not mean the same condition. It might have been necessary to build a new fence, but the instruction would only justify a recovery for the value of the old fence.   So with regard to the filling, the court told the jury that if the gravel, etc., had benefited the lots in

any particular they should make allowance for such benefit in assessing damages.

Finding no error, the judgment is affirmed.

DUNBAR, C. J., and SCOTT and ANDERS, JJ., concur.

HOYT, J., dissents.