Thatcher et al., Appellees, *v.* Lane Construction Co. et al., Appellants.

(No. 9533—Decided January 13, 1970.)

*Messrs. Tyack & Scott* and *Mr. Michael F. Colley,* for appellees.

*Mr. William N. Postlewaite,* for appellants.

Leach, J. This is an appeal by defendants, appellants herein, from a judgment of the Franklin County Municipal

Court awarding damages to plaintiffs, appellees herein, in the sum of $1,750.

Plaintiffs purchased a lot from defendants in a subdivision in northwest Franklin County in early 1964. Immediately to the south of this lot was a reserve established by the defendants for the use of all lot owners of the subdivision.

Sometime after plaintiff's purchase and while defendants were removing trees and underbrush from the reserve lot, the operator of the bulldozer inadvertently came onto the lot belonging to the plaintiffs and removed trees and underbrush.

At trial, it was admitted that defendants were responsible to the plaintiffs for the damage done to their lot, the single issue being the extent and the measure of damages.

The case was tried to the court without a jury. The court rendered separate findings of fact and conclusions of law. No bill of exceptions has been filed herein. Thus, we are limited to the question of whether a judgment in such *amount* is supported by the findings of fact of the trial court.

The court found that practically all the trees and underbrush had been cleared in an area on the south side of plaintiff's lot approximately 100 feet long by 30 feet wide; that this area had included five trees with diameters of four to five inches with a "replacement value" of $170 per tree, and fifteen trees two inches in diameter or less with a "reasonable cost of replacement" of $60 per tree; and that the court was "unable to determine the value of the underbrush destroyed." (The judgment of $1,750 apparently was arrived at by multiplying $170 x 5 [$850] and $60 x 15 [$900], and adding the products of such multiplication.)

The court further found the "fair market value" of the lot to have been $10,000 immediately prior to the trespass and $9,000 immediately after the trespass.

Citing the cases of *Cleveland Electric Illuminating Co.* v. *Merryweather* (1928), 6 Ohio Law Abs. 528; *Klein* v. *Garrison* (1951), 91 Ohio App. 418; and *Ohio Collieries Co.* v. *Cocke* (1923), 107 Ohio St. 238, as their principal authori-

ties, defendants assert (and asserted in the trial court) that this case involves injury to real property and that the measure of damages for injury to real property cannot exceed the "difference in the market value before and after the injury."

While recognizing this to be the "general rule in Ohio," the trial court concluded that the rule set out in *Huber* v. *Serpico* (1962), 71 N. J. Super. 329, 176 A. 2d 805, should be "an exception" to such general rule. This rule, as quoted with approval by the trial court, is as follows:

"Landowner, whose shade or ornamental trees or shrubbery having peculiar value to him have been destroyed by trespasser, should be allowed as damages fair cost of restoring his land to reasonable approximation of its former condition, without necessary limitation to diminution in market value of land."

The court found as a matter of fact "* * *that the primary reason why the plaintiffs purchased the lot in question was that it was wooded and that for aesthetic reasons and in the interest of privacy they desired to have the trees on the south side of the lot form a 'shield' to separate their proposed house from the so-called 'reserve lot' of the developer."

In rejecting the evidence of plaintiffs' expert that "5 large shade trees 6"-10" in caliper," "15 medium shade trees 3"-5" in caliper" and " 23 small shade trees 2"-3" in caliper" were "necessary to re-establish the cover," the court, although not specifically so stating, necessarily concluded that 5 trees with a diameter of 4 to 5 inches and 15 trees 2 inches in diameter or less were necessary to re-establish such "shield."

While the restoration of land to a *reasonable approximation* of its former condition, where the primary purpose of such restoration is to provide a "shield" for a homesite, ordinarily would not seem to require the replacing of *identical sized* trees in *identical numbers* to those which existed before, in the absence of a bill of exceptions herein the issue of such necessity is not before this court.

For the purposes of this appeal, the basic issue is

whether the rule as to damages to real property, mentioned in *Cleveland Electric Illuminating Co.* v. *Merryweather, Klein* v. *Garrison,* and *Ohio Collieries Co.* v. *Cocke,* necessarily is controlling herein, or whether there are or should be exceptions thereto.

Passing for the moment the question of the binding effect, if any, of these Ohio cases on the issue presented herein, we conclude from a review of many authorities outside Ohio that the rule, as stated by the New Jersey court in *Huber,* constitutes a proper application of the common-law rule of damages to real property, as a well recognized exception to the general rule limiting recovery to the difference in *market* value.

We further conclude that the "general rule" as to damages is not, and was not intended to be, a "formulaic criterion that must be followed in every instance." Annotation—Measure of damages for destruction of or injury to trees and shrubbery. 69 A. L. R. 2d 1335, 1366.

As stated at page 1340 of that same annotation:

"It is a fundamental principle of the law of damages that an injured party should recover an amount sufficient to compensate him fully for losses which are the result of a wrongdoer's conduct. Thus, while the courts have formulated measures of damage to be applied when trees are injured or destroyed, the opinions indicate that the rules are not to be applied in an arbitrary manner but are to be used as flexible guides in determining the true amount of the loss."

That same basic thought is contained in a prior annotation on the same subject (161 A. L. R. 549, 551), where, after discussing the applicability of various rules of damages for destruction of or injury to trees and shrubbery, it is stated:

"* * * And it may be likewise observed of these cases that few of them, if any, evince an intention to view the rule as an arbitrary one or an exact formula, exclusively applicable or in itself appropriate to the solution of all problems in which injury to the land constitutes the chief difficulty, but rather they show that regard should be had in each case to all the circumstances and the separate items

of damage proved, subject to the limitation that no duplications for particular items should be allowed."

No attempt will be made herein to review the many cases containing language which would support the *Huber* principle. *E.g. Koch* v. *Sackman-Phillips Inv. Co.* (1894), 9 Wash. 405, 37 P. 703; *Gilman* v. *Brown* (1902), 115 Wis. 1, 91 N. W. 227; *Lucas* v. *Morrison* (Texas Civ. App., 1956), 286 S. W. 2d 190; *Schankin* v. *Buskirk* (1958), 354 Mich. 490, 93 N. W. 2d 293; *Brereton* v. *Dixon* (1967), 20 Utah 2d 64, 433 P. 2d 3; *Samson Construction Co.* v. *Brusowankin* (1958), 218 Md. 458, 147 A. 2d 430, 69 A. L. R. 2d 1326.

With reference to this subject matter, Restatement of the Law of Torts, Section 929 (page 661), states:

"*b. Restoration.* Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus where a ditch is dug without right upon the land of another, the other normally is entitled to damages measured by the expense of filling the ditch, if he wishes it filled. If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

"On the other hand, where a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, where a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion."

See, also, 4 Sutherland, A Treatise on the Law of Dam-

ages, 4th Ed, 3772, Section 1019; 22 American Jurisprudence 2d 207, Section 143; 87 Corpus Juris Secundum 1080.

The underlying principle involved in these decisions is well stated in *Gilman* v. *Brown, supra* (115 Wis. 1), at page 7:

"* * * An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him * * * and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated, and yet * * * the disturbance of that arrangement, therefore, might not impair the general market value. * * * The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale. * * *"

Since, in the instant case, the trial court concluded that the actual damages exceeded the impairment of general *market* value (based on an evaluation of the price a hypothetical willing buyer would pay and the price a hypothetical willing seller would accept), we assume that it necessarily concluded that the injury fell into the type which would not be fully appreciated by these two hypothetical individuals.

Such ruling "* * * allows the owner of property which has been damaged the privilege which should be his of having the decision of how he desires to use his property, by giving him the amount of damages he suffers on the basis of that use." *Brereton* v. *Dixon, supra* (20 Utah 2d 64).

For the reasons stated, we conclude that the rule as to damages enunciated in *Huber* and which, so far as would appear from the record of this case, was applied by the trial court is a proper and a fair rule; a rule which we would approve unless precluded by binding precedent to the contrary.

In *Cleveland Electric Illuminating Co.* v. *Merryweather* (Court of Appeals for Cuyahoga County), 6 Ohio Law Abs. 528, it was *conceded* in argument that the injury to the tree (a wrongful trimming), without reference to the property on which it stood, was not the proper measure of damages. Furthermore that case contained no reference as to any necessity of replacement.

*Klein* v. *Garrison,* 91 Ohio App. 418, involved the removal of topsoil and the changing of the grade of a lot. Neither that case, nor the cases reviewed therein, involved destruction of trees on a residential lot or the right of the owner to use his own property in a particular manner, involving the presence of trees as a necessary ingredient to such use.

Paragraph five of the syllabus of *Ohio Collieries Co.* v. *Cocke,* 107 Ohio St. 238, reads as follows:

"In an action for damages by reason of loss of subjacent support caused by the removal of pillars, ribs, and stumps in a coal mine, the owner of the surface is entitled to recover, if the injury is of a permanent or irreparable nature, the difference in the market value of the property as a whole, including improvements thereon, before and after the injury. If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure."

As noted in the syllabus itself, the rule stated therein had reference to "loss of subjacent support." Neither the syllabus nor the opinion purports to make the rule stated therein applicable to *all* cases of injury to real property. The question of the applicability of such rule to other types of injury to real property was not discussed therein. A reported decision should not be interpreted as "settling, by judicial determination, a principle not passed upon or raised at the time of the adjudication." *State, ex rel. Gordon,* v. *Rhodes* (1952), 158 Ohio St. 129; *Fouts* v. *State* (1857),

8 Ohio St. 98, 123; *State* v. *Pugh* (1885), 43 Ohio St. 98, 122; *The Milwaukee Mechanics' Ins. Co.* v. *Russell* (1901), 65 Ohio St. 230, 257, 56 L. R. A. 159.

In *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church* (1933), 126 Ohio St. 140, the Supreme Court approved as a measure of damages to real property the cost of restoration even though such would exceed the difference in *market* value. We quote from the opinion at pages 150 and 151:

"* * * As urged by counsel for plaintiff in error on oral argument at rehearing, fundamentally it is the purpose of the law to afford to the person damaged *compensation for the loss sustained.* In a case involving the destruction of a building by fire negligently caused, where restoration is impracticable, the measure of damages is the difference between the reasonable value immediately before the damage and the reasonable value immediately afterwards.

"* * *

"In cases in which restoration of the building damaged can be made, the measure of damages is the reasonable cost of restoration or repairs.

"* * *

"In the instant case all of the testimony tended to indicate that the property damaged had no market value, as that term is ordinarily understood. Manifestly, to apply such a test exclusively in this case would not have resulted in giving the church fair compensation for its loss. * * *"

While it is apparent that the case now before this court for decision is distinguishable factually from the *Northwestern Ohio Natural Gas Co. case,* that case, decided after the *Ohio Collieries Co. case,* and without making reference thereto, is indicative of the fact that the rule contained in *Ohio Collieries Co.* is not intended to be applicable to every conceivable injury to real property, as the only permissive measure of damages.

The general rule that the measure of damages for injury to real estate shall not exceed the difference in the market value of the entire tract immediately before and immediately after the injury is not an arbitrary or

exact formula to be applied in every case without regard to whether its application would compensate the injured party fully for losses which are the proximate result of the wrongdoer's conduct.

Where the presence of trees is essential to the planned use of property for a homesite in accordance with the taste and wishes of its owner, where not unreasonable, and where such trees are destroyed by trespassers, the owner may be awarded as damages the fair cost of restoring his land to a reasonable approximation of its former condition, if such restoration be practical, without necessary limitation to diminution in market value of such land.

*Judgment affirmed.*

STRAUSBAUGH and HOLMES, JJ., concur.