Appellants Gale C. Wilson, Misty R. Wilson, and MJ Enterprises appeal a judgment entered by the Washington County Court of Common Pleas in favor of appellees Larry R. Francis and Saundra S. Francis. Appellants assign three errors for this Court's review.
1. "The Court erred in granting judgment against Misty R. Wilson contrary to the evidence and the allegations of Plaintiffs' Complaint."
2. "The trial Court erred in permitting and accepting Plaintiffs' inexpert opinion over objection as the sole and exclusive evidence offered to prove (a) $4,000 diminution of fair market value of encroachment area and (b) $10,000 value for conversion of trees within encroachment area as measure of Plaintiffs' damages under Ohio law."
3. "The court erred in granting Plaintiffs judgment against Defendant, Gale C. Wilson individually, contrary to the weight of the evidence."
 I.
Appellees own a 2.4 acre parcel of land in a rural area of Newport Township, Washington County ("Francis property"). Appellant Gale C. Wilson owns a parcel adjacent and to the south of appellees' land. Appellant Misty R. Wilson, who is Gale Wilson's daughter, owns a three-acre parcel adjacent and to the east of appellees' land. In 1992, appellant MJ Enterprises, a business entity operated by Gale Wilson, began a sand and gravel operation on the "Wilson properties."
Before commencement of the sand and gravel operation, Gale Wilson contracted with LeBile Timber Cutting to clear brush and trees from the Wilsons' property. Gale Wilson did not conduct a survey of the property before commencing this operation. The clear cutting activities allegedly cut twenty to thirty large trees on the Francis property. At the time of cutting, appellees had planned to let these trees grow for two more years. Then, appellees intended to cut the trees, sell the timber, and use the proceeds for a doublewide mobile home.
Following the clearing of appellees' trees, appellants commenced the sand and gravel operation, which resulted in further trespassing upon the Francis property. Appellants cleared topsoil from their own property in connection with their sand and gravel activities but, in the process, cleared away topsoil from the Francis property. The record also shows that appellants constructed a "haul road" to use in connection with their sand and gravel operations. However, appellants constructed the road, at least in part, on the Francis property, where it remained until appellants moved the road to one of the Wilson properties. Appellants' operations piled a large collection of sand upon appellees' property. Additionally, an old fence that approximated the property line between the Francis property and one of the Wilson properties was destroyed. Appellees also discovered that stakes placed on the property line as part of a prior survey of their property were destroyed.
As appellants' sand and gravel operations continued on the Wilson properties, appellees became concerned that the operations were trespassing on and causing damage to their tract. In October 1994, appellees hired Thomas Schultheis, a licensed land surveyor, to conduct a survey of the Francis property. Mr. Schultheis produced a plat indicating that the activities on appellants' property encroached upon appellees' land over both the southern and eastern property lines. The extent of the encroachment varied from a few feet to approximately twenty-two feet over the property line.
In 1996, appellees filed a complaint in the Washington County Court of Common Pleas. Appellees alleged that appellants "encroached" upon their property and sought damages for appellants' various acts of trespass. During a trial to the court, appellees presented testimony from various witnesses on the extent of appellants' trespass and of the damages incurred. Appellee Saundra Francis testified to the loss of $10,000 worth of trees, as well as topsoil with a market value of $2,000 to $3,000. Ms. Francis also testified to her belief that the value of her property had diminished by $4,000 as a result of appellants' sand and gravel operations.
Appellees also presented expert testimony from Thomas Pethel regarding what appellees would need to do in order to restore their property to its original condition. Mr. Pethel, who had eighteen years of experience in the construction business, testified to various costs, including the cost of replacing topsoil, erecting a concrete wall to mitigate sandstorms arising from appellants' operations, and moving a pile of sand situated on appellees' property. According to Mr. Pethel's testimony, the cost of restoring the Francis property to its pre-damaged condition exceeded $10,000.
Appellants presented Gale Wilson as their only witness. Mr. Wilson testified that he operates the gravel pit on the Wilson properties as MJ Sand and Gravel Inc., a West Virginia corporation. MJ Sand and Gravel Inc. replaced MJ Enterprises, a non-corporate entity, sometime after operations commenced on the Wilson properties. Mr. Wilson admitted that he did not personally conduct a survey prior to commencing his sand and gravel operations on the Wilson properties. Mr. Wilson admitted that the haul road associated with his business actually rested on appellees' property until he had it moved following Mr. Schultheis' survey.
While admitting that his operations trespassed onto appellees' property, Mr. Wilson disputed some of appellees' testimony regarding damages. Mr. Wilson testified that the timber company cut only a few scattered trees that had no commercial value. He also disputed Mr. Pethel's testimony regarding the need for a retaining wall. Mr. Wilson did not otherwise dispute Mr. Pethel's assessment of the restoration costs, but expressed a willingness to perform the various items of restoration himself.
The trial court concluded that appellees were entitled to judgment against appellants, jointly and severally. The trial court also made the following conclusion concerning the measure of damages:
 In this case, the correct measure of damages is the value of the timber that has been removed wrongfully by the [Appellants] from the [Appellees'] land plus the lesser of the cost to restore the [Appellees'] land to its original contour or the diminution of fair market value to the [Appellees'] land caused by the [Appellants'] encroachment on the [Appellees'] land.
The trial court's findings of fact determined that the cost of restoration exceeded the diminution in value to appellees' property. Based on its conclusions, the trial court held that appellees were entitled to $14,400. This figure represented $10,000 for the conversion of appellees' trees, $4,000 for the diminution in value to appellees' property, and $400 for what the court termed as "the cost to remove the large pile of sand that the [Appellants] have left on the [Appellees'] land."
After the trial court entered judgment in favor of appellees, appellants filed a timely notice of appeal.
 II.
Appellants' first and third assignments of error, brought on behalf of Misty Wilson and Gale Wilson, respectively, challenge the trial court's verdict finding them jointly and severally liable for the damages awarded to appellees. The first assignment of error argues that the finding of liability for Misty Wilson is "contrary to the weight of the evidence." Similarly, the third assignment of error challenges the determination of Gale Wilson's individual liability as "against the weight of the evidence." We analyze these assignments of error together, as they both ask this court to decide whether the evidence adduced at trial supports a finding of liability against these two individual defendants.
App.R. 12(C) enables an appellate court to reverse a trial court's judgment when it is against the manifest weight of the evidence. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79. When an appellant asks a reviewing court to overturn a trial court's judgment as against the manifest weight of the evidence, the reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, this standard requires the reviewing court to uphold the trial court's judgment so long as it is "supported by some competent, credible evidence going to all the essential elements of the case * * * ." C.E. Morris v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. The deference accorded to the trial court's findings arises from "the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal at 80.
With these principles in mind, we first turn to appellants' argument that the judgment holding Misty Wilson liable is against the weight of the evidence. The complaint in this action sought damages for alleged trespass by the defendants. "One is subject to liability to another for trespass * * * if he intentionally (a) enters land in the possession of the other or causes a thing or a third person to do so * * * ." Baker v.Shymkiv (1983), 6 Ohio St.3d 151, 153 (quoting Restatement of Torts 2d 277, Section 158). Thus, Misty Wilson did not have to personally enter upon appellees' land in order to be liable for trespass. One who aids, assists, or advises a trespasser is equally liable with the person actually making the unprivileged entry upon another's land. Bamer v. Tiger, Inc. (May 8, 1987), Muskingum App. No. CA-86-17, unreported (citing Bell v. Miller
(1831), 5 Ohio 250, syllabus); see, also, Lamberjack v. Gyde
(Nov. 19, 1993), Ottawa App. No. 92-0T-034, unreported (person not present at time of trespass may be liable if he aided or advised in the trespass).
However, we agree with appellants that the record contains no facts or testimony indicating that Misty Wilson should be liable to the plaintiffs. It is undisputed that Misty Wilson owns the property east of and adjacent to appellees' property. Nonetheless, there is no evidence that she either affirmatively assisted anyone or was herself responsible for any of the appellees' damages. Accordingly, we sustain appellants' first assignment of error.
Looking to appellants' third assignment of error, the evidence supports a finding that Gale Wilson, individually, is liable for trespass. Appellants argue that MJ Sand and Gravel Inc. is solely responsible for any trespass from the mining operations because it was the corporation, not any individuals, that conducted the operations. Appellants' argument fails to recognize that when the trespass began, Gale Wilson was the principal of MJ Enterprises, a sole proprietorship. Wilson testified he was uncertain when his business was incorporated. The record is replete with testimony that Gale Wilson was intimately involved in the operations that resulted in the trespass onto appellees' property. Gale Wilson's testimony, in large part, did not differentiate between activities he personally engaged in and those in which his corporation engaged. It was well within the province of the trial court, as the trier of fact, to conclude that Gale Wilson caused, aided, or assisted in trespassory acts taking place. Gale Wilson testified that he hired the timber company to cut down trees, which ultimately resulted in trespass on appellees' property. This verbal contract between Wilson and the timber company apparently occurred before the incorporation of MJ Enterprises. There was plenty of evidence upon which the trial court could have based its conclusion that Gale Wilson was individually liable for trespass. Appellant's third assignment of error is therefore overruled.[1]
 III.
Appellants' second assignment of error asserts that the trial court impermissibly permitted appellee Saundra Francis to give opinion testimony regarding the diminution in market value of her property and the value of the trees lost as a result of appellants' trespass.[2]
Initially, appellants argue that the trial court erred by allowing appellee Saundra Francis to give opinion testimony on two values relating to damages. On direct examination, Saundra Francis testified that the fair market value of her property, in her estimation, diminished by $4,000 as a result of the sand and gravel operations that trespassed onto the Francis property. Ms. Francis also testified that the trees that were cut as a result of appellants' trespass were worth $10,000. Appellants argue that this testimony was speculative at best and that the record reveals no factual basis for Ms. Francis' valuations. Appellants assert that this was improper opinion testimony under Evid.R. 701.
Evid.R. 701 provides:
 "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
Generally, before a person may testify as to the value of property, the person must qualify as an expert. Tokles Son v.Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 625 (citingState Auto Mut. Ins. Co. v. Chrysler Corp. (1973), 36 Ohio St.2d 151) . However, an exception to the general rule exists for owners of property. In the case of both real and personal property, an owner may testify as to the property's value.Tokles, 65 Ohio St.3d at 626; Smith v. Padgett (1987), 32 Ohio St.3d 344,347. Ohio law recognizes that a property owner may have sufficient knowledge of his or her property's value to give an opinion. As the Supreme Court stated in Tokles, 65 Ohio St. 3
d at 626, 627:
 Ownership may involve an intimate knowledge of the nature, quality, cost, and condition of the property. However, ownership of property may in other cases constitute very little, if any, qualification to form an opinion as to the value of the property.
* * *
 An examination of the many cases regarding ownership testimony from various jurisdictions indicates that owners of property have been permitted to testify not merely because they are owners, but rather because, due to that ownership, they are presumed to have special knowledge of the value of their own property.
* * *
 This means that the witness must show that he is familiar with the property itself and that he has current sufficient knowledge of the value of the item by, for example, demonstrating a firsthand knowledge of the characteristics of the property, its actual and potential uses and its condition or by showing other meaningful experience in dealing with the item.
In response to query on the commercial value of the trees, Ms. Francis testified that "I wouldn't want to go any lower than $10,000 on it." The record shows that Ms. Francis attempted to testify to the value of replacement trees as being $4,560. The trial court sustained appellants' objections to the replacement value and the appellees have not appealed that decision. The trial court, however, allowed the testimony regarding the $10,000 value that Ms. Francis personally attached to the trees.
Ms. Francis' mere status as an owner of the trees is an insufficient basis for admitting this testimony. Id. However, Ms. Francis did have special knowledge of the value of the trees gained by virtue of her ownership. She had a "timber man" look at and ostensibly appraise the trees some two years earlier for the purpose of selling them for lumber. While this testimony was somewhat sketchy and "remote," we believe it formed a sufficient basis to allow the trial court to exercise its discretion in admitting her figure. This is especially true in light of the fact that appellant removed all the stumps, making a traditional approach to determining stumpage value all but impossible.
We turn now to Ms. Francis' testimony that her property had diminished in value by $4,000 as a result of appellants' trespassing sand and gravel operations. Appellants did not object to Ms. Francis' testimony regarding the $4,000 diminution in value. Appellants' failure to object to this testimony at trial waives any challenge to the admissibility of this testimony. See Leichtamer v. American Motors Corp. (1981),67 Ohio St.2d 456, 475; State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of syllabus.
Accordingly, we overrule appellants' second assignment of error concerning the admissibility of Saundra Francis' opinion testimony.
Appellants also challenge the trial court's determination of damages. The trial court awarded $14,400 to appellees and broke down the damage award into specific components. The court assessed damages of: $10,000 for the value of the trees "converted" by appellants; $4,000 for diminution in the fair market value of appellees' land due to appellants' trespass; and $400 for the cost of removing a large pile of sand that appellants placed on appellees' property. Appellants argue generally that the damages calculation was contrary to Ohio law regarding damages to real estate and trees. Appellants also raise several specific challenges to the trial court's award of damages. Appellants first argue that the trial court erred in awarding cost of restoration damages without ascertaining whether such damages were necessary or reasonable. Appellants also argue that the $10,000 figure for the conversion of trees was a speculative value. Finally, appellants challenge the $400 award as contrary to the evidence at trial.
Appellees' complaint sought damages for the trespass committed by appellants. Generally, when reparable damage occurs as a result of a trespass, a property owner may recover "restoration damages," representing the cost of restoring the property to its condition before the trespass.
 If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of use of the property * * * unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the market value before and after the injury becomes the measure.
Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238, paragraph five of the syllabus. More recent cases have refined the rule stated in Ohio Collieries. The diminution in fair market value no longer serves as an absolute limit to the recovery of damages. A landowner may now receive restoration costs that exceed diminution in fair market value when: (1) the owner holds the property for personal use; (2) there are reasons personal to the owner for seeking restoration; and (3) restoration damages are not grossly disproportionate to the value of the property. Wooten v. Knisley (Nov. 3, 1995), Highland App. No. 94-CA-858, unreported, reversed on other grounds (1997), 79 Ohio St.3d 282; see, also, Thatcher v. LaneConstr. Co. (1970), 21 Ohio App.2d 41, 45-49. In assessing whether restoration damages are "grossly disproportionate," courts measure the cost of restoration in proportion to the value of the entire property. Wooten at fn. 4.[3]
Additionally, when a trespasser's cutting of trees represents part of the damage done to the property of another, the stumpage value of the trees taken is a proper measure of damages.
See Denoyer v. Lamb (1984), 22 Ohio App.3d 136, 140; see, also, 4 Restatement of the Law 2d, Torts (1979), Section 929(2). "Stumpage" is the value of undisturbed timber lying on the land and is important to an owner who holds the land in order to exploit that timber. Denoyer at 140. Here, appellees had planned to harvest the trees at a future date.
Normally, when assessing damages for a trespass that includes the cutting of trees, a property owner has three options for recovery: (1) diminution in fair market value of the property; (2) cost of restoring the property to its pre-trespass condition, so long as that value is not grossly disproportionate to the property's value; or (3) the stumpage value of trees that the trespasser has caused to be cut. A property owner, however, may not realize all of these damage remedies. The damaged property owner is entitled to only one measure of damages and must elect which measure he or she seeks to recover. Wooten, supra; see, also, Miller v. Jordan (1993),87 Ohio App.3d 819, 823 (finding trial court committed error by awarding both stumpage and diminution in value damages).
Here, however, there are two separate and distinct injuries to appellees' property: (1) removal of the trees; and (2) removal of topsoil and construction of a haul road. Appellees are entitled to recover for each of these acts of trespass since they caused separate and distinct injury to the land. Likewise, appellees are entitled to elect different measures of damages for each of these separate injuries, i.e., stumpage value for the trees and diminution in value for the topsoil/haul road. We see no error in this regard.
However, the court also awarded $400 for the cost of removing the sand pile. This amounts to an award for restoration relating to the topsoil/haul road. Appellees are not entitled to both diminution in value and restoration for this injury to their property. Accordingly, the appellants' second assignment of error is sustained to this limited effect.
Appellants make additional challenges with respect to the court's damage award that amount to nothing more than weight of the evidence arguments. Because of the foregoing analysis, we need only address one of these arguments.[4]
Appellants complain that the trial court's award of $10,000 for the value of the trees cut was unfounded and contrary to any credible evidence adduced at trial. We disagree with appellants. The trial court relied upon the $10,000 figure testified to by Saundra Francis. As we noted in our discussion of appellants' first assignment of error, Ms. Francis was competent to testify as to the value of the trees as a knowledgeable owner of the property. Appellants' effort to have this court weigh the evidence of the trees' value in appellants' favor is merely an attempt to have us second-guess the trial court's factual determination. We decline to do so based on the existence of some evidence supporting the trial court's findings. Seasons Coal, supra, 10 Ohio St.3d at 80. Appellants could have presented evidence at trial to rebut appellees' valuation of the trees cut, but did not do so, except for some of the testimony presented by Gale Wilson.[5] To the extent the trial court chose to believe Ms. Francis' testimony over Mr. Wilson's, it was the trial court's prerogative to do so as the trier of fact. See Hill v. Briggs
(1996), 111 Ohio App.3d 405, 410-11 (assessment of witness credibility is an issue for the trier of fact).
In sum, we sustain appellants' second assignment of error to the limited extent of reversing the award of damages for removal of the sand pile. The remainder of the second assignment of error is meritless.
 III.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded for entry of judgment consistent with our opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART and cause remanded to the trial court for further proceedings consistent with this opinion and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, J. and Grey,* J.: Concur in Judgment and Opinion.
For the Court
 By: ________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Appellant notes that MJ Sand and Gravel, Inc. would be the responsible party for any trespass that occurred and that appellees failed to join the corporation as a necessary party to this action. However, the complaint reveals that appellees filed suit against three defendants: Gale Wilson, Misty Wilson, and MJ Enterprises, which later became MJ Sand and Gravel Inc. We also note that, based on our determination that competent, credible evidence exists to hold Gale Wilson personally liable, we have no occasion to decide whether Mr. Wilson should be liable as an "alter ego" of MJ Sand and Gravel Inc.
[2] Appellants' second assignment of error, by its express terms, assigns only the error with regard to the admission of opinion testimony. The assignment of error makes no mention of a challenge to the trial court's damage award. Appellants brief the damages question as an "issue" relating to their second assignment of error. We do not read the language of appellants' second assignment of error to encompass the damages issue; the question of whether the trial court properly calculated damages should have been assigned as a separate error. Thus, appellants have briefed an issue without assigning any error relating to that issue. A court of appeals "need only pass upon errorsassigned and briefed; errors not specifically raised may bedisregarded." Toledo's Shoppers City v. Steak House (1986),24 Ohio St.3d 198, 202 (emphasis added.) Nevertheless, in the interests of justice and in light of the fact that both parties have briefed and argued the issue, we will address the damages issue raised by appellants. Cf. Matthews v. Matthews (1981),5 Ohio App.3d 140, 146.
[3] We recognize that this view has not been universal. Some courts have measured proportionality of restoration costs in relation to the diminution in fair market value figure and not the property's entire value. See, e.g., Reeser v. Weaver Bros.,Inc. (1992), 78 Ohio App.3d 681, 689-91. However, we reiterate our reasoning in Wooten that the better view measures proportionality with respect to the property's value as a whole, not simply the figure representing diminution in value. Cf. Northwestern Ohio Natural Gas v. First CongregationalChurch (1933), 126 Ohio St. 140, 150-51 (restoration damages appropriate despite absence of any ascertainable market value before or after damage); Denoyer v. Lamb (1984), 22 Ohio App.3d 136,139 (restoration damages appropriate even though market values of parcels have not been decreased) (citing 4 Restatement of the Law 2d, Torts, Section 929, Comment b).
[4] Appellants argue that appellees are not entitled to any restoration costs because they failed to establish any "personal need" to restore the land (Restatement 2d Torts, Section 929, Comment b; see, also, Wooten, supra) and also because appellees failed to introduce evidence of their property's fair market value, precluding the trial court from determining whether such costs were reasonable. However, because the trial court's entry chose to award diminution in value in lieu of restoration costs and because appellees did not appeal that decision, this issue is not before the court. Appellants also challenge the award of $400 for removal of sand as contrary to the evidence. In light of our decision reversing this portion of the damages award, the issue of whether the trial court properly came to this figure is moot.
[5] Appellants indicate that they could not have anticipated a damage award based on the value of the trees because appellees did not allege damage of that nature in their complaint. Appellants are incorrect. The complaint explicitly alleged that appellants' logging operations resulted in the removal of trees belonging to appellees. The complaint put appellants on sufficient notice of the possibility of damages based on the trees' value.
* Lawrence Grey, retired of the Fourth District Court of Appeals, sitting by assignment of the Supreme Court in the Fourth District.