OPINION
This appeal is taken by Defendant/Appellant James Whitta from the judgment entered by the Court of Common Pleas of Seneca County finding him in contempt of court and ordering him to pay damages in the amount of $11,360.00.
This is the third time our Court of Appeals has reviewed this case on appeal and thus the facts pertinent to this appeal extend back 15 years and require explanation. The first case was filed in Wood County, Ohio on November 14, 1985 by Eldon and Arlene Horner, Appellees, against James Whitta, Appellant. The action was transferred to Seneca County and tried without a jury.
The trial court entered judgment in favor of the Horners on July 5, 1988. The trial court found that the Horners had acquired title to the portion of Fremont Street previously claimed by Whitta through adverse possession. Further the trial court found that Whitta had trespassed upon the land to Horners' monetary damage and other injury and entered judgment accordingly.
On March 29, 1990, this court, after review of the record on the issues presented by the parties to the appeal, affirmed the trial court's judgment. On April 9, 1992, Whitta filed a motion in the common pleas court requesting that the court vacate its July 5, 1988 judgment, arguing that at the time that judgment was entered the trial court lacked the authority to declare Fremont Street a vacated Street because the Fremont Street vacation had not been accomplished properly and the court therefore lacked jurisdiction to enter judgment on the subject matter of the action.
The trial court granted Whitta's motion and vacated its earlier judgment except for the award of monetary damages to Horner. Both parties appealed that judgment. On March 16, 1994, this court, after review of the record on the issues presented by the parties reversed the judgment of the trial court holding in part:
 "By his motion to vacate judgment, Whitta seeks to relitigate issues of fact long since settled between the parties to this action. He is now precluded from doing so by the doctrine of collateral estoppel as to the facts necessary to litigate the issue he now raises and by the doctrine of res judicata
as to the final judgment against him in Horners' favor.
* * *
 We hold that the common pleas court erred by granting Whitta's motion to vacate a longstanding judgment previously affirmed on appeal, and having no discretion to vacate judgment contrary to law, abused its discretion by doing so."
Following our reversal Whitta sought a discretionary appeal to the Supreme Court. It was denied on August 11, 1994.
The appeal presently before us concerns a complaint filed by the Horners against Whitta in the Court of Common Pleas of Seneca County on August 12, 1996. The complaint alleged that Whitta had committed trespass and contempt of court for his failure to abide by the prior order of the Court.
On April 1, 1999, after an extensive bench trial the trial court filed a decision and on October 1, 1999, entered separate findings of fact and conclusions of law. Finally, on November 15, 1999, the trial court entered final judgment in favor of the Horners. It is in part:
 The following described portion of vacated Fremont Street be quieted in the name of plaintiffs herein, and that defendant, and anyone claiming buy (sic) or though him shall be barred from asserting any title or right therein * * *
 Defendant shall at his expense remove the "dirt wall" and any personal property including asphalt, buildings, fences and other encroachments within ninety days of the journalization of this judgment from said vacated Fremont Street.
 Defendant shall pay $5,525.00 as compensatory damages, $835.00 for the cost of the survey, and attorney fees in the amount of $4,000.00 to the plaintiff and their counsel within ninety days of the journalization of this judgment.
 Defendant shall pay as punitive damages to the plaintiff $1,000.00 and all court costs.
On appeal from that judgment Whitta makes the following four assignments of error:
 The trial court erred by granting damages for the loss of profits by utilizing gross crop revenues without making any deductions for normal expenses and profit sharing with the tenant farm and by using more acreage than actually trespassed upon, and by awarding attorney fees in excess of those proved.
 The trial court erred in finding appellant in contempt for failure to remove dirt and buildings and items of personal property appellant had never been ordered to remove.
 The trial court erred in entering judgment quieting title to the entirety of the south half of vacated Fremont Street in Appellees.
 The court erred in finding a trespass existed when appellant entered appellees' land to make a repair to a tile appellant had an easement to use.
Each of Whitta's assignments of error outlined above ask this court to decide whether the evidence adduced at trial supports the findings of damages and liability against Whitta. As a result, we will analyze all of these assignments of error together.
When reviewing a claim that the manifest weight of the evidence tends to favor the party who was unsuccessful at the trial level, this court as a reviewing court "must not substitute its judgment for that of the trial court." Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. The judgment of the trial court, if supported by some competent credible evidence going to all the essential elements of the case, will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578. The deference accorded to the trial court's findings arises from "the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal at 80, 461 N.E.2d 1273.
Whitta asserts three separate assignments of error with regard to the damages awarded by the trial court. He complains that the award of compensatory damages, punitive damages and attorney fees were unfounded and "totally unsupported by the evidence, contrary to the evidence, an abuse of discretion and shocking in amount." He also claims that the trial court incorrectly found that he had trespassed in addition to a finding that he was in contempt and further erred by quieting title to the entirety of the south half of vacated Fremont Street.
With the principles stated above in mind we first turn to whether the award of compensatory damages was against the manifest weight of the evidence. It is well-settled that damages are available in every case of trespass. Pearl v. Pic Walsh FreightCo. (1969), 112 Ohio App. 11, 12, 168 N.E.2d 571. "Once a party proves that he has been trespassed against that party has a right to nominal damages without specifically proving actual damages."Fairfield Commons Condominium Assn. v. Stasa (1985), 30 Ohio App.3d 11,20, 506 N.E.2d 237. Therefore, the fact that trial court awarded damages is not in question because damages are presumed. The only question that remains before this Court is whether or not the judgment for special damages was supported by competent credible evidence.
Generally, when reparable damage occurs as a result of a trespass, a property owner may recover "restoration damages," representing the cost of restoring the property to its condition before the trespass.
 If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property * * * unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the market value before and after the injury becomes the measure.
 Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238,140 N.E. 356, paragraph five of the syllabus. The general rule is not absolute, but is applied with some flexibility when it is demonstrated that, under the facts of the particular case, the general measure of damages is inadequate to fully compensate the injured party for the wrongful acts of another. Apel v. Katz
(1998), 83 Ohio St.3d 11, 20, 697 N.E.2d 600.
Consistent with Apel more recent cases have refined the rulestated in Ohio Collieries. The diminution in fair market value nolonger serves as an absolute limit to the recovery of damages. Alandowner may now receive restoration costs that exceed diminutionin fair market value when: (1) the owner holds the property forpersonal use; (2) there are reasons personal to the owner forseeking restoration; and (3) restoration damages are not grosslydisproportionate to the value of the property. Wooten v. Knisley(Nov. 3, 1995), Highland App. No. 94-CA-858, unreported, reversedon other grounds (1997), 79 Ohio St.3d 282, 680 N.E.2d 1245;Thatcher v. Lane Constr. Co. (1970), 21 Ohio App.2d 41, 45-49,254 N.E.2d 703.
Proof of the fair market differential is usually needed to determine whether the damages are reasonable. Shell Oil Co. v.Huttenbauer Land Co. (1997), 118 Ohio App.3d 714, 721 citingThatcher v. Lane Constr. Co. (1970), 21 Ohio App.2d 41,254 N.E.2d 703. However, failure to present evidence of diminution in market value is not necessarily fatal to a claim for tort damages to real property. Apel at 20.
The method of proving damages in the case of trespass set forth by the courts of Ohio and summarized above was not the method used at the trial of the case sub judice. Much to the contrary, the court accepted the testimony of Mr. Horner concerning value of the use of the property during the period of the continued trespass and the nature and extent of his business, farming. Whitta alleges that such testimony in proof of damages is inconsistent with accepted authority as Horner testified to profits and thus, the damages awarded to Horner are in error.
In 1855 in The City of Cincinnati v. Platt Evans (1855), 5 Ohio St. 594, the Supreme Court considered a similar issue. The city of Cincinnati pursuant to an order from the city council removed the storefront of a business owned by Platt Evans so that the original line of the street could be restored. Evans sued the city to recover damages sustained by the removal of his storefront and the consequent interruption to his business as a merchant tailor.
At trial the court allowed Evans to present evidence of lost profits and further instructed the jury "they might allow the plaintiff damages for the loss of profits of his business, occasioned by its interruption by the acts of the defendant." Id.
at 603. On appeal the Supreme Court held that damages based on evidence of lost profits are not allowable however, "[I]n an action for trespass for injury to an building occupied by the plaintiff as a store, resulting in an interruption of his business, he may recover, in addition to the damages done to the building, such further sum as will compensate him for the loss of its enjoyment while such interruption continued." Id. at paragraph three of the syllabus. In determining damages, "it is competent to prove the nature and extent of the business, the necessity of using the building for its prosecution, and the value of such use to him during the period of interruption." Id at paragraph four of the syllabus.
In so holding the Supreme Court reasoned:
 "There is, perhaps, no subject so important in the practical administration of justice, about which so much doubt and uncertainty exists, or such confusion is to be found in the adjudged cases, as that which concerns the rules for assessing damages in actions for torts. Some principles, however are well settled; and by carefully attending to the analogies they afford, we shall be much more likely to arrive at a correct conclusion, than by placing entire reliance upon particular adjudications. One of these principles, applicable to cases like the present, where neither fraud, malice nor other circumstances justifying the recovery of exemplary damages exists, is that which limits recovery to the natural and proximate consequences of the illegal act. These, it fairly presumed, the party committing the injury in good faith, or under claim of right, may foresee and except to compensate, should he be found in the wrong. But the principle necessarily excludes all those consequences which are remote, and indirect, and all investigation of loses which are purely speculative." Id. at 603
The record reveals that Mr. Horner testified concerning the damages to the value of his property resulting from the trespass of Whitta. In giving his testimony Horner presented evidence that the property upon which Whitta continued to trespass for the past 15 years was indeed used for farming; that such land was necessary for him continue to farm and he further testified to the value of such use for farming during Whitta's unlawful occupation of the land.
Whitta argues that this proffered testimony was evidence of profits and as such is inconsistent with accepted authority throughout the state. However, despite Whitta's characterization of the damages as "profits", Horner testified to the value of the use of the farmland during the period it was occupied by Whitta.
Therefore, because Horner did not present evidence speculating as to the loss of profits but instead offered evidence of his prospective use of the land unlawfully occupied by Whitta and its value lost during the period of occupation by Whitta, following the reasoning set forth by the Supreme Court we cannot say that the compensatory damages awarded by the trial court are "remote, indirect or speculative". As a result, we find that the damages awarded by the trial judge are supported by competent credible evidence, and thus, the award was not against the manifest weight of the evidence.
Next we must determine whether the award of punitive damageswas proper. Punitive damages are not compensatory in nature;rather they are to serve as a punishment for the offender and awarning to others. Foust v. Valleybrook Realty Co. (1981),4 Ohio App.3d 164, 168, 446 N.E.2d 1122. Punitive damages arerecoverable where the trier of fact finds that tortious actions ofa defendant, giving rise to the cause of action, were taken withactual malice, through conduct that may be characterized asreckless, wanton, willful or gross. Villella v. Waikem Motors,Inc. (1989), 45 Ohio St.3d 36, 37, 543 N.E.2d 464. In addition,punitive damages may be awarded in cases involving fraud, maliceor insult. Griffin v. Lamberjack (1994), 96 Ohio App.3d 257, 263,644 N.E.2d 1087.
The record reveals that the actions of Whitta in trespassing on the Horners' property could indeed be characterized as intentional or willful and thus result in an award of punitive damages. Whitta testified as follows concerning the trespass, contempt of court and the prior order of the court:
 Q: As a result of your reading that document, Mr. Whitta, do you have any dispute that Eldon and Arlene Horner own that thirty-three foot strip of vacated south half of Fremont Street?
A: By this document [prior judgment entry] they were given that.
Q: You don't dispute that, is that right?
A: According to the document.
* * *
 Q: Now exhibit one required you to remove a dirt wall, is that correct?
A: Yeah.
 Q: * * * do you admit that, in fact, some of that dirt wall remains?
A: Just like the buildings, right.
* * *
 Q: And the court order required you to remove it from that thirty-three foot strip of land. Noth(sic) — it says nothing about a line of trees or anything like that in the order, is that correct?
A: More or less that's correct.
* * *
Q: The asphalt is over the property, is that correct? `
A: There's pieces of it, yes.
* * *
 Q: There remains other construction equipment over on Eldon and Arlene's property, is that right?
 A: There are construction equipment, uh sticking over that south boundary line according to this survey.
 Q: The property that the Judge gave to Eldon and Arlene, is that correct?
A: What he did not order me to move, right.
Q: Well, my question was the property that they gave to them?
A: It's over that line.
Q: You have a problem with that, don't you?
A: You better believe that I do.
Q: You don't agree with what Judge Spellerberg did, do you?
A: I do not.
Q: And you're angry about it, aren't you?
 A: What do you expect me to be? When I lost an asphalt plant because of this.
Whitta's son testified as follows:
 Q: Uhm, did you get, have any permission from them? I mean, did you ever see any Obviously, you didn't when you got out there
 A: Well I
Q: Prior to that?
 A? Yeah, I knew we didn't have permission when we got out there, yeah.
Whitta admitted that he was perfectly aware that he was in violation of the prior court order. Moreover, he admitted he was angry about the disposition of Fremont Street in favor of the Horners fifteen years ago and that he still refused to agree with the trial court's decision. Therefore, after careful review of the record, we conclude there was sufficient credible evidence to support the trial court's conclusion that Whitta willfully and intentionally trespassed upon the Horners' property. Therefore the trial court properly awarded punitive damages for such unlawful and willful continued occupancy.
Whitta's remaining argument concerning damages claims that itwas error for the trial court to award attorney fees because the"only evidence admitted was the fixed fee of $2700."
An award of attorney fees is predicated upon a proper award of punitive damages. Apel v. Katz (1998), 83 Ohio St.3d 11, 14,697 N.E.2d 600. However, before a trial court may award attorney's fees it must have evidence that they are reasonable. Yarber v.Cooper (1988), 61 Ohio App.3d 609, 573 N.E.2d 713. The factors to be considered in deciding if the fees are reasonable include: 1) time and labor, novelty of the issues raised, and necessary skill to pursue the course of action; 2) customary fees in the locality for similar legal services; 3) result obtained; and 4) experience, reputation and ability of counsel. DR 2-106 (B) Code of Professional Responsibility; Yarber v. Cooper (1988), 61 Ohio App.3d 609,573 N.E.2d 713.
The record reveals that the court made the following statement on the record with regards to the attorney fees claimed by the Horners:
 "See, I think as far as your bill is concerned I'm gonna take judicial notice of the time and effort put into the file by you. I've seen you, we've talked on the phone on numerous phone conferences, we've had phone conferences with Attorney Mayle. Uh, I've seen the pleadings and the records and, and the like and your performance here today, and I don't think that twenty-seven hundred dollars is unreasonable for a trial given the nature of this case, the facts and circumstances, the pleadings have been taken, uh, that have been filed to date and my review of the. I'll take judicial notice of all of that and I don't think twenty-seven hundred dollars is unreasonable; nor do I believe the services were unnecessary."
The record reveals that the Horners' were indeed awarded punitive damages and thus any reasonable attorney fees may also be awarded. However, Whitta claims that the trial judge cannot simply take judicial notice of the reasonableness of the attorney fees without comparing them to "fees in the locality for similar services."
However, the record reveals that Mr. Horner also presented documentation of another attorney's bills to Horner. The documentation was from Attorney Drew Hanna for his work on the case from 1994. The total of those attorney bills for similar work in the area and in fact on this case was $7,541. The judge struck those fees as unreasonable. Therefore, Whitta's argument that the trial court failed to compare the fees to those in the locality is without merit. Moreover, the statement made by the trial court and outlined above mentions the court's observance of the skill, time, and ability demonstrated by the attorney represented Appellant. We hold that the decision of the trial judge in awarding attorney fees was neither unfair nor in error.
Whitta's final arguments suggest that the trial court erred when it found that Whitta was in contempt of court and had committed trespass and further erred by quieting title to Fremont Street. The standard of review enunciated above continues to apply. The record clearly reveals that on July 5, 1988, the Court of Common Pleas of Seneca County found that the Horners had acquired title to the portion of Fremont Street previously claimed by Whitta. A thorough review of the record currently before us and outlined in portions of the transcript above reveals that Whitta himself admits that he has failed to comply with that order and he continues to trespass upon the property. Therefore, it goes without saying that the judgment of the trial court finding Whitta has committed trespass and is in contempt of a previous court order and by quieting title to property in question reaffirming that which had been done previously, was supported by competent credible evidence.
Whitta having failed to show error, the judgment of the Courtof Common Pleas of Seneca County is affirmed.
 ___________________________ WALTERS, J.
SHAW and WALTERS, JJ., concur.