APEL ET AL., APPELLANTS, *v.* KATZ ET AL., APPELLEES.

[Cite as *Apel v. Katz* (1998), 83 Ohio St.3d 11.]

(No. 97–641—Submitted March 24, 1998—Decided August 19, 1998.)

12

14

*J. Michael Goldberg,* for appellants.

*Hahn, Loeser & Parks, L.L.P., Michael J. Garvin* and *Andrew S. Pollis,* for appellees.

---

**ALICE ROBIE RESNICK, J.** This case first presents the issue of the correct interpretation to be given to the scope of the reservation of the right to keep and maintain a roadway over the easement on appellees' property. Second, the case raises various issues regarding the damage awards in appellees' favor on their trespass counterclaim against appellant Zeev Apel. For the reasons which follow, after a thorough review of the record, we determine that the trial court erred in ruling against appellants on their request for a declaratory judgment interpreting the scope of the easement across appellees' property. We also determine that the damages awarded to appellees on their trespass counterclaim were properly assessed against appellant. We reverse the judgment of the court of appeals, enter final judgment for appellants on the roadway issue, and enter final judgment for appellees on the compensatory damages, punitive damages, and attorney fees awarded on the trespass counterclaim.

I

In the initial ruling interpreting the scope of the reservation by Goodman in the deed to the Saporitos allowing Goodman to "keep and maintain a roadway" on the easement over the property now owned by appellees, the trial court granted appellees' motion for partial summary judgment. Since appellees had argued that the roadway provision was merely a personal reservation by Goodman, it seems logical to assume that the trial court must have accepted that argument in ruling the way that it did, and must have rejected appellants' argument that the roadway easement was an express easement that runs with the land for appellants' benefit. However, we share the concerns expressed by the court of appeals in this case that the trial court, in issuing what amounted to a declaratory judgment on the scope of the easement, should have included a determination of the rights of the parties involved. The failure of the trial court to issue an explanation of the consequences of its ruling was the first in a series of misunderstandings and missteps involving this case that have compounded as the case has progressed to place it in the confusing posture we now encounter.

The complaint in this case was filed in 1989. Thus far, this case has gone through the trial court two times, and has also gone through the court of appeals

two times, and it seems that the case is no closer to resolution now than it was prior to the issuance of any rulings by the trial court in its early stages. In the opinion now being appealed from, the court of appeals has ordered yet another remand to the trial court, apparently for the trial court to readdress the scope of the roadway easement—the key question raised in appellants' request for a declaratory judgment almost ten years ago. There still has been no appellate review of the ultimate propriety of the trial court's determination on this question, a question of law that in our view was ripe for decision at the time the trial court rendered its initial judgment on June 11, 1991.

Our review of the record convinces us that this issue is capable of resolution from an examination of the materials before us. We disagree with the determination reached by the court of appeals that "a genuine issue of material fact remains pending for litigation relative to whether the grantor intended to reserve for herself an express easement with the right to maintain a roadway." We see no reason to remand this cause to the trial court, and therefore we reverse the judgment of the court of appeals ordering that result. We proceed to an examination of the terms of the roadway provision of the reservation, to review what we understand to be the trial court's construction of its scope.

In arguing for what they each contend is the proper interpretation of this provision, the parties cite R.C. 5301.02, and dispute how that statute applies to the inquiry. R.C. 5301.02 provides that "[t]he use of terms of inheritance or succession are [sic] not necessary to create a fee simple estate, and every grant, conveyance, or mortgage of lands, tenements, or hereditaments shall convey or mortgage the entire interest which the grantor could lawfully grant, convey, or mortgage, unless it clearly appears by the deed, mortgage, or instrument that the grantor intended to convey or mortgage a less [sic] estate."

In citing this statute, the parties dispute whether it even applies at all, with appellees arguing that the statute on its face applies only to grants, conveyances, and mortgages, not reservations, of interests. In the event that this statute is found to apply, the parties dispute how it affects the outcome. The parties also cite cases to support their interpretations.

For purposes here, R.C. 5301.02 principally provides that the failure to include language of inheritance or succession, typically the phrase "heirs and assigns," is not automatically fatal to the creation of a fee estate. See, generally, *Ewing v. McClanahan* (1986), 33 Ohio App.3d 46, 48, 514 N.E.2d 444, 445, fn. 4; *DeShon v. Parker* (1974), 49 Ohio App.2d 366, 367, 3 O.O.3d 430, 431, 361 N.E.2d 457, 458. Beyond that limited proposition, we find that the statute and other cited authorities are of little help in clarifying the specifics of our inquiry. R.C. 5301.02 in essence goes on to direct a court to look to the wording of the provision at issue to determine its meaning. We see no need to rely on the statute or on

the parties' specific references to case law to support our interpretation of the roadway provision, but instead look to the wording of the reservation itself to determine its scope.

In this situation, the language employed, considered in light of the surrounding circumstances, is the best indication of what Goodman and the Saporitos intended when they agreed to the transfer of the front parcel in 1976. See *Gill v. Fletcher* (1906), 74 Ohio St. 295, 78 N.E. 433, paragraph one of the syllabus. While the authorities cited by the parties appear to consistently support this general approach in resolving disputes of this type, the specifics of such an inquiry depend upon the facts of each case. Thus, regardless of whether we apply R.C. 5301.02 or not, the analysis is the same.

We disagree with appellees' contention, voiced throughout this litigation, that the roadway provision is a separate "clause" in the deed from Goodman to the Saporitos reserving the easement. We instead agree with appellants' contention that the roadway provision is a part of the same clause earlier reserving an easement for ingress and egress, and actually complements that earlier reservation. Appellees have not disputed that the easement for ingress and egress runs with the land. Furthermore, appellees have not contended that the easement is limited to foot access to the property, and the reservation's terms do not support such an interpretation. Thus appellees must necessarily concede that access to vehicles is implied by the easement for ingress and egress. It seems clear that to make vehicle access practicable and meaningful, the right to keep and maintain a roadway was contemplated by Goodman and the Saporitos to be a part of the right of ingress and egress, rather than an independent reservation.

This view is buttressed by the language contained in the deed transferring the rear parcel to appellants from Goodman, in which the reservation of the easement is also passed, and in which Goodman describes that easement as providing "ingress and egress to and from the above described property to Pike Drive, *the right to keep and maintain a roadway*," and utility access rights. (Emphasis added.) Obviously, Goodman felt that she had reserved as an appurtenant easement running with the land the right to keep and maintain the roadway, and also felt that she could transfer that roadway right to appellants.

Appellees' position throughout this litigation implies that Goodman, in the deed transferring the rear parcel to appellants, must have been mistaken in her belief that the roadway easement could be transferred to appellants. However, it seems to us to be more likely that it is appellees who are mistaken about the construction of the roadway provision, and about the intent of Goodman and the Saporitos evidenced in the 1976 deed for the sale of the front parcel.

In conclusion, we find that no ambiguity is present in the provision at issue, and we resort to no specific rules of construction to resolve the easement's scope.

The trial court erred in granting partial summary judgment for appellees on this question, and instead should have granted summary judgment for appellants, and should have declared that appellants' easement rights over appellees' property include the right to keep and maintain a roadway in order to facilitate "ingress and egress to and from the property" of appellants. The contours of the roadway right over the thirty-foot-wide easement are defined by what is reasonable under the circumstances present here.

## II

The court of appeals below appears to have decided that it was unclear whether the issues raised in appellant Zeev Apel's assignments of error regarding trespass damages were interrelated with the roadway issue remanded to the trial court, and so declined to address those remaining assignments of error. The parties to this appeal agree that the trespass issues are unrelated to the roadway issue, and contend that the court of appeals erred in not addressing them. The parties suggest that we order a remand on those questions to the court of appeals, accompanied by a directive from this court ordering the court of appeals to address those issues.

To that end, the parties cite App.R. 12(A)(1), and argue that the court of appeals had a mandatory duty to review and rule on the remaining assignments of error. App.R. 12(A)(1) provides:

"On an undismissed appeal from a trial court, a court of appeals shall do all of the following:

" * * *

"(c) Unless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision."

After a thorough review of the record, we agree with the parties' position that the trespass issues raised in the court of appeals were unrelated to the roadway issue raised there, and should have been addressed by the court of appeals. Furthermore, we have already determined that the court of appeals should not have ordered a remand to the trial court on the roadway issue. However, rather than remanding this cause to the court of appeals with orders to address those assignments of error, we choose to decide the issues, based on the briefing of those issues by the parties both here and in the court of appeals.

The remaining assignments of error raised in the court of appeals by appellant Zeev Apel are:

"II. The trial court erred in failing to sustain Zeev Apel's motion for directed verdict; and, the jury's verdict was against the manifest weight of the evidence.

"III. The trial court erred as a matter of law in failing to instruct the jury properly on the issue of restoration damages.

"IV. The trial court erred as a matter of law in failing to sustain Zeev Apel's motion to dismiss the Katzes' punitive damages claim.

"V. The trial court erred as a matter of law in permitting the jury to consider the issue of punitive damages."

In his second assignment of error, appellant argues that no compensatory damages for trespass should have been awarded in this case. Appellant argues both that the elements of trespass were not proven, so that the trial court should have sustained his motion for a directed verdict, and further that the jury's verdict was unfounded.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

A motion for a directed verdict must be denied if substantial competent evidence supports the position of the party opposing the motion, so that reasonable minds might reach different conclusions based upon the evidence. See *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. Appellant argues that appellees did not raise a *prima facie* case of trespass against him.

"A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *." *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598, 615 N.E.2d 631, 633. See, also, *Chance v. BP Chemicals, Inc.* (1996), 77 Ohio St.3d 17, 24, 670 N.E.2d 985, 991. Based on our review of the record, we find that appellees raised a *prima facie* case of trespass sufficient to get the issue to the jury, so that appellant's directed verdict motion was properly denied by the trial court. Appellees presented evidence regarding appellant's use of the portion of the gravel pathway located off the easement. The trial court did not err in allowing the matter to go to the jury.

Further, for the same reasons, we find on the record here that substantial competent evidence was presented to support the jury's verdict, and we defer to the jury's determination that a trespass occurred.

In his third assignment of error, appellant takes issue with the trial court's instruction to the jury on the proper measure of damages. Appellant argues that the trial court erred by not instructing that appellees' damage award was limited to the diminution in fair market value of the property caused by appellant's conduct. We find that appellant's view of the measure of damages is unduly restrictive as applied to the facts of this case, and does not recognize that some flexibility is permissible in the ascertainment of damages suffered in the appropriate situation. See, *e.g.*, *Thatcher v. Lane Constr. Co.* (1970), 21 Ohio App.2d 41, 48–49, 50 O.O.2d 95, 99, 254 N.E.2d 703, 708 ("The general rule that the measure of damages for injury to real estate shall not exceed the difference in the market value of the entire tract immediately before and immediately after the injury is not an * * * exact formula to be applied in every case without regard to whether its application would compensate the injured party fully for losses which are the proximate result of the wrongdoer's conduct."). Furthermore, in the circumstances of this case, we find that the failure of appellees to put on evidence regarding the fair market value of their property before and after the trespass conduct occurred is not fatal to appellees' claim for damages.

In appellant's fourth and fifth assignments of error, he challenges the propriety of punitive damages in this situation. Appellant first argues that appellees' counterclaim was based on an ordinary trespass, and that the trial court should have dismissed the punitive damages component of the counterclaim as insufficient as a matter of law. In support of this position, in his fourth assignment of error, appellant argues that appellees failed to specifically plead malice or insult in their counterclaim, and also argues that appellees pled no facts to warrant punitive damages. After a review of the record, we determine that appellees in their pleadings adequately put forth their punitive damages claim to put appellant on notice of the substance of the claim, and to avoid a dismissal of that claim by the trial court.

Appellant, in his fifth assignment of error, next argues that the trial court should not have allowed the jury to consider whether appellees were entitled to punitive damages because the facts of this case do not, as a matter of law, support a punitive damages award. The punitive damages in this case were awarded pursuant to former R.C. 2315.21. The parties, not challenging the validity of that statute in the course of these proceedings, frame their arguments around whether the requirements of former R.C. 2315.21 are met in the circumstances of this case. The parties' arguments focus on the following provisions of former R.C. 2315.21:

"(B) * * * [P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult * * *;

"(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.

"(C) * * *

" * * *

"(3) In a tort action, the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that he is entitled to recover punitive or exemplary damages." Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1690–1691.

Because appellant was opposing the punitive damages sought in appellees' counterclaim, he is the "defendant" for purposes of this statute, and appellees are the "plaintiffs."

Appellant, citing *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704, argues that there must be a nexus between the underlying tortious action and the related punitive damages claim. Further, citing former R.C. 2315.21(B), appellant argues that punitive damages must flow directly from the tortious "actions or omissions" of the defendant. Appellant contends that the required nexus is not present here, because the compensatory damages were based on his alleged trespassing onto appellees' land (and the resulting damage to appellees' property), while the punitive damages were based on verbal insults, or malicious behavior unrelated to that entry and damage.

Appellees cite *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, paragraph one of the syllabus, for the proposition that punitive damages may be awarded for acts different from those directly causing compensatory damages, so long as the punitive damages flow from a course of conduct related to the compensatory damages. Appellant points out that this court in *Moskovitz* was not applying former R.C. 2315.21(B), because the cause of action in that case predated the effective date of the statute. However, even though appellant may be correct in this regard, we find that *Moskovitz* is relevant to our consideration, because the argument of appellees based on *Moskovitz* is not inconsistent with the terms of former R.C. 2315.21(B). We accept appellees' position that the relationship between the tortious conduct and the punitive damages is not so remote in the circumstances of this case to make punitive damages unavailable under former R.C. 2315.21, and so disagree with appellant's position that the required nexus is missing.

Finally, appellant's remaining contentions can be summarized as arguing in essence that appellees did not prove either "malice" or "insult" under former R.C. 2315.21(B)(1) by the clear-and-convincing-evidence standard of former R.C.

2315.21(C)(3). See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174. Appellant argues that, at the most, his conduct leading to the punitive damages award was merely negligent, so that punitive damages should not have been awarded in this case.

We acknowledge that this case does not present a classic punitive damages situation, as opposed to the situations in cases such as *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397 (punitive damages award based on allegation of bad faith refusal to settle claim against insurer), and *Moskovitz* (punitive damages award based on claim that defendant doctor in medical malpractice action altered patient records), which involved allegations of more egregious conduct. We also recognize that the level of wrongfulness in appellant's acts is somewhat open to question based on the differing interpretations the parties here place on their respective representations of the facts. However, after a comprehensive review of the record, we conclude that the trial court was justified in allowing the question of punitive damages to go to the jury, precisely because the facts are open to interpretation. Having concluded that the trial court did not err in submitting the punitive damages question to the jury, we defer to the jury's finding that punitive damages were appropriate.

In conclusion, for all the foregoing reasons, the judgment of the court of appeals remanding this cause to the trial court is reversed. Furthermore, on the merits, we grant judgment in favor of appellants on their complaint in accordance with the rights declared in this opinion, and grant judgment in favor of appellees on their counterclaim.

*Judgment accordingly.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

---

COOK, J., **concurring in part and dissenting in part.** I respectfully dissent from the majority decision on the issue of punitive damages.

Compensatory damages in this case were awarded to the Katzes because Mr. Apel damaged weeds, grass, and wildflowers by driving outside the easement benefiting his property. The punitive damage award, on the other hand, is not based on that activity. Instead, it is tied to verbal insults that stem from the roadway dispute.

The applicable version of R.C. 2315.21(B) provided:

"[P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate;

"(2) The plaintiff in question has adduced proof of *actual damages that resulted from actions or omissions as described in division (B)(1) of this section.*" (Emphasis added.)  Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1690–1691.

Because it cannot be said that the tortious activity for which the Katzes recovered actual damages (*i.e.*, physical damage to vegetation resulting from Apel's driving off the easement) "resulted" from the acts or omissions demonstrating malice, fraud, oppression, or insult (*i.e.*, verbal insults uttered by Apel and directed at the Katz family), the Katzes failed to demonstrate that they were entitled to punitive damages under former R.C. 2315.21(B).

The long-standing rule in Ohio is that "[e]xemplary or punitive damages may not be awarded in the absence of proof of actual damages." *Richard v. Hunter* (1949), 151 Ohio St. 185, 39 O.O. 24, 85 N.E.2d 109, syllabus.  "The purpose of the *Richard* rule is to keep the punitive damages awarded a mere *incident* of the cause of action, rather than let it become a cause of action in and of itself.  * * * No civil cause of action in this state may be maintained simply for punitive damages." (Emphasis *sic*.)  *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 214, 485 N.E.2d 704, 705.  Consistent with this rule, former R.C. 2315.21(B) required punitive damages to flow from the same tortious activity causing actual damages.

The judicial policy preferences announced in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, cannot trump the unambiguous expression of the General Assembly in former R.C. 2315.21(B).  In *Moskovitz,* the *court* declined to "establish a rule requiring that malicious conduct giving rise to a claim for punitive damages must independently cause compensable harm before punitive damages may be awarded." *Id.* at 651, 635 N.E.2d at 343.  As noted by the majority, *Moskovitz* did not apply former R.C. 2315.21(B) because the cause of action predated the effective date of that statute.  But we are now squarely faced with conflicting legislative (former R.C. 2315.21[B] ) and judicial (*Moskovitz* ) views on a nonconstitutional issue, and the General Assembly's view must prevail.

The majority justifies its application of *Moskovitz* by reasoning that "*Moskovitz* is not inconsistent with the terms of former R.C. 2315.21(B)."  Because I do not read the first paragraph of the syllabus of *Moskovitz* and former R.C.

2315.21(B) as being amenable to the majority's reconciliation, I dissent. A directed verdict was warranted on the punitive damages issue, and the Katzes are not entitled to a punitive damages award or attorney fees.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.