On February 17, 1998, The Village of Reserve Development Company (VRDC) and William DeChant, one of its owners, were ordered to pay $7,500 to Alva and Wanda Dotson (collectively "Dotsons") for trespass and damage to their property. The Dotsons have appealed the amount of the damage award.
The Dotsons have assigned as error that the trial court incorrectly barred them, as a matter of law, from recovering restoration/replacement costs rather than diminution of value. We overrule their assignment of error and affirm the judgment of the trial court.
 I
In September 1989 the Dotsons bought the property on which they live for $48,600. The property is a parcel that is one hundred feet wide, north to south, and one thousand two hundred feet long, east to west. Their house is on the west end of the lot. The east half of the lot is heavily wooded, and a drainage ditch marks the east lot line.
In June 1991 VRDC began developing the large plot of land to the east of the Dotsons' property. According to Ronald Danne, DeChant's son, he "understood" that he had obtained "verbal permission" from the owners of the property to remove the trees and widen the drainage ditch along the edge of the VRDC development.[1] VRDC did not speak with the Dotsons prior to beginning development. Acting on Danne's mistaken belief VRDC hired Gary Eckenrode, who subcontracted with Edwards Tree Service, to remove the vegetation from the east twenty-five to thirty feet of the Dotsons' parcel. The cleared portion amounts to approximately 2.5 percent of the Dotsons' property.
On two separate occasions after the trees were removed the Dotsons spoke with representatives of VRDC. The initial conversation was between Mr. Dotson and James Schilens. During that initial conversation, Mr. Dotson reported that "nobody gave nobody no permission." Schilens described that conversation as cordial, and said that "without a doubt in my mind, they did not know that that was their property back there. * * * I don't think either one of us knew whose property that was back there." He indicated that, "there was no demands at that time. It was just kind of left with giving them the knowledge of what was proceeding with the development."
On the second occasion, Mr. Dotson spoke with both William DeChant and Schilens. With respect to this later conversation Dotson said that he told DeChant, "All I want you to do is put my surveyor stakes back and then come back and talk to me." DeChant's description of the conversation is that the Dotsons did not express any particular concerns during that conversation, although they did discuss getting estimates to restore the wooded area. Schilens said that he informed the Dotsons that the ditch was going to be cleared out, and observed, again, that his impression was that no one really knew whose property went where at that point, in part because the survey pins were 25 feet inside the Dotsons' property line. Although the Dotsons did not claim to have told Schilens and DeChant that they knew the ditch was on their property, they did indicate that, at the time of these conversations, they were certain that it was. DeChant said, with respect to this second meeting, that the question of permission to dredge the ditch did not come up.
On June 24 Gary Eckenrode, at the direction of VRDC, deepened and widened the drainage ditch that was partially on the Dotsons' property. The debris from this project was put on the Dotsons' property.
DeChant said that after the ditch was dredged the Dotsons told him, for the first time, that they wanted him off of their property. He responded by immediately ordering the excavators off the property.
The Dotsons sued VRDC and DeChant for trespass.[2] The trial court judge, as part of the pretrial process, required the parties to brief the issue of whether damages should be measured by the cost of restoration or by the diminution in value of the property. In their brief, the Dotsons asserted that "they purchased the property with the intent to use it as a home site and the treed area for recreation." They did not submit deposition transcripts, affidavits, or other material of an evidentiary nature supporting this assertion. VRDC submitted Alva Dotson's entire deposition transcript. The strongest assertion Dotson made during the deposition regarding their use of the property, was, "I just know we go back there, that's all. * * * Just walking around." He was uncertain whether they had walked through the area at any time during the six preceding months. He did not know what kind of trees were in the area that had been cleared, or even whether any of the trees that had been cleared were evergreen. He testified that he had obtained an estimate from Barnes Nursery regarding the replacement cost for the trees, which is apparently the same estimate that was later proffered at the close of the bench trial.
On June 16, 1993, the trial judge ruled that "the evidence presented by the parties" demonstrated that the loss was of a "woodland mix of trees which range from saplings to large trees indigenous to the area" and that the Dotsons had not demonstrated special circumstances with respect to their intended use of the damaged property that was sufficient to remove it from the general rule regarding damages for unauthorized removal of trees and shrubbery. Because of this, the judge determined that the proper measure of damages was the diminution in value that resulted from clearing the trees and widening the ditch.[3]
Consistent with this ruling, the judge limited the evidence admitted at the subsequent bench trial to that which was related to diminution in value of the property. The Dotsons proffered, for the record, the estimate from Barnes Nursery that suggested replacing two hundred seventy trees, with an average value of two hundred dollars each, for a total of $54,000. The estimate also bears the notation, "1 — 9" Ash [and] Assorted Hardwood Trees 7 large 20" — 24."[4] The Dotsons did not testify at trial about any intended or actual use of the property beyond the explanation given in the pre-trial deposition testimony of Alva Dotson, nor did they proffer any such testimony for the record.
 I Proper Measure of Damages for Destruction of Wooded Area In a trespass to real property case, the general measure of damages for injury caused by the unauthorized removal of trees is the diminution of value of the property that results from their removal. Thatcher v. Lane Constr. Co. (1970), 21 Ohio App.2d 41, 48-49. The general rule is not absolute, but is to be applied with some flexibility when it is demonstrated that, under the facts of the particular case, the general measure of damages is inadequate to fully compensate the injured party for the wrongful acts of another. Apel v. Katz (1998), 83 Ohio St.3d 11, 20. See also Marc Amy Co. v. Gregory (March 21, 1984), Lorain App. No. 3546, unreported, at 2. Cases in which damages greater than diminution in value have been awarded are, generally, those in which the damaged property was of an articulable, but intangible, value to the injured party who owned and occupied the property. See Denoyer v. Lamb (1984), 22 Ohio App.3d 136, 139-140 (noting several cases in which restoration costs have been awarded). See also, e.g., Kapcsos v. Hammond (1983), 13 Ohio App.3d 140, 141-142
(declining to award restoration costs because the damaged shrubbery was neither rare nor ornamental). The award of restoration damages has also generally been limited to instances in which restoration is practical and reasonable and the expenditure not grossly disproportionate. See Denoyer, 22 Ohio App.3d at 138-140.
Contrary to the Dotsons' assertion, the trial court did not bar them, as a matter of law, from the recovery of restoration costs. The statement of the Ohio Supreme Court in Apel implies that the determination of whether the general rule as to damages applies, or whether a departure from the general rule is warranted, is a factual one. See Apel, 83 Ohio St.3d at 20.
Factual determinations made by a judge conducting a bench trial may be reversed if they are against the manifest weight of the evidence. App.R. 12(C). The Ohio Supreme Court has noted that "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. In determining whether this is one of those exceptional cases, we review the entire record, consider the credibility of the witnesses, weigh all the evidence, and make all reasonable inferences. Angus v. Ventura (January 27, 1999), Medina App. No. 2740-M, unreported at 5. To sustain the Dotsons' assignment of error this court must find, in resolving conflicts in the evidence, that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id.
As part of a preliminary ruling designed to narrow the issues for trial, the trial court held that the Dotsons had not demonstrated special circumstances that would justify departure from an award of diminution in value. That decision was made final with the journalization of the judgment.
The Dotsons did not assert, in any testimonial manner, that the damaged portion of the property was "essential to the Plaintiffs' purchase and use of the property for a homesite."[5] They established, at most, that they walk around back there. As to the importance of that portion of the property to the Dotsons, even though they had only owned the property for twenty-one months at the time of the trespass, they did not know whether they had been on the back end of their property at any time during the previous six months.
The Dotsons proffered a single restoration estimate to the court at the close of the bench trial. That estimate placed the restoration cost at $54,000. The portion of the property that was damaged amounted to approximately 2.5 percent of the parcel owned by the Dotsons, and was worth between $2,200 and $3,000. The estimated restoration cost is $5,400 more than the Dotsons paid for the entire parcel only twenty-one months before the damage was done; it is between eighteen and twenty-five times the cost of purchasing the damaged portion of the property outright. The cost of restoration, based on the only evidence proffered, is grossly disproportionate to the diminution in value, even if we view the damaged portion as having been completely destroyed by the trespass.
Our review of the evidence does not convince us that the trial court's decision was against the manifest weight of the evidence. Even using the "reasonableness" guideline suggested by the appellants, awarding the cost of restoration is not appropriate under the facts in this case. The gross disparity between the value of the property and the asserted costs of restoration, combined with the nebulous nature of the Dotsons' asserted interest in it being left in its undisturbed state, make awarding the restoration costs unreasonable. The trial court's determination that the proper measure of damages is diminution in value is not against the manifest weight of the evidence. The Dotsons' assignment of error is overruled.
 Punitive Damages and Attorney Fees The Dotsons did not separately assign as error the failure to award punitive damages and attorney fees. They have, however, argued that they are entitled to punitive damages and reasonable attorney fees because VRDC acted with malice in trespassing on their property, removing their trees and widening the drainage ditch. By this, we understand them to mean that they believe that the trial court's decision not to award punitive damages was against the manifest weight of the evidence. Because they have argued the matter in their brief and the appellee has responded to their arguments we address their arguments here.
The Ohio Supreme Court had defined "malice," for the purposes of awarding punitive damages as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty (1987), 32 Ohio St.3d 334, syllabus. At issue in this case is conscious disregard malice, which the Ohio Supreme Court has described as having "a positive element of conscious wrongdoing * * *. This element has been termed conscious, deliberate or intentional." Id. at 335.
The process that VRDC went through in attempting to obtain permission to clear the drainage ditch was unquestionably reckless. The trial judge properly made this assessment and awarded treble damages pursuant to R.C. 901.51. He also determined that the reckless behavior did not rise to the level required to justify the award of punitive damages. Recklessness, within the meaning of R.C. 901.51, does not necessarily include the positive element of conscious wrongdoing that is necessary to award punitive damages.
No evidence was presented that would support a finding that the initial entry and tree removal contained a positive element of conscious wrongdoing. With respect to the second entry, when the ditch was dredged, it is clear that VRDC knew there was a question about whether the ditch was on the Dotsons' property. From the testimony, summarized above, it appears that the parties did not clearly communicate with each other during their two interim meetings. VRDC apparently believed the Dotsons were uncertain that the ditch was on their property and, whether it was or not, did not object to the dredging of the ditch. The Dotsons apparently believed that nothing beyond replacing the stakes would be done without further conversation.
The trial judge could reasonably have determined, from testimony presented, that the representatives of VRDC left their meetings with the Dotsons under the mistaken belief that the Dotsons had no objections to the dredging of the ditch. Once VRDC was notified that there might be a problem it should have verified ownership of the property and permission from the owners to dredge the ditch. However, its failure to do, on a mistaken belief that the owners of the property did not object to its completion of the project, does not necessarily rise to the level of conscious wrongdoing. In deciding not to award punitive damages, we cannot say that the trial judge clearly lost his way and created such a manifest miscarriage of justice that a new trial must be granted.
The award of attorney fees is predicated upon a proper award of punitive damages. Apel, 83 Ohio St.3d at 14, fn.1. Because no punitive damages were awarded, attorney fees may not be awarded either.
 III
The Dotsons' assignment of error is overruled, because the trial court appropriately determined that under the facts of this case the proper measure of damages is diminution in value. In addition, the trial judge's decision not to award punitive damages was not against the manifest weight of the evidence. Without punitive damages, there is no basis to award attorney fees. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellants.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT
SLABY, J.
WHITMORE, J.
CONCUR
[1] The developers had spoken with most of the owners of property adjacent to the area being developed. In the case of the Dotsons' property, Danne had spoken with a long time friend, whom he believed to be the son of the owner of the property.
[2] The Village of Sheffield was also named as a defendant. It cross claimed against VRDC and DeChant. The Dotsons' insurance company intervened to recover the payment it had made to the Dotsons for the diminution in value of their property as a result of VRDC's trespass. By the time of trial, the Village of Sheffield had been dismissed as a defendant, and had dismissed its cross claims. All remaining parties stipulated that the Dotsons' insurance company would receive $2,575 from any damage award as an offset against its payment to the Dotsons.
[3] The trial judge attempted to make this interlocutory ruling immediately appealable, by reciting the "no just reason for delay" language contained in Civ.R. 54(B). This court dismissed the appeal for lack of jurisdiction to hear an appeal from the interlocutory ruling. Dotson v. Village Western Reserve Co.
(February 3, 1994), Lorain App. No. 93CA9005674, unreported journal entry.
In addition to the attempted appeal of the interlocutory ruling, the entire matter was submitted to arbitration. Once the arbitration decision was issued, DeChant and VRDC appealed, denovo, to the Lorain County Court of Common Pleas.
[4] The estimate made by the firm that removed the trees indicated that the vegetation removed was "[a]ll brush except for 4 trees; one dead cherry, one 10" ash, two 20"-24" cottonwood[.]" It estimated the value of the ash at $89.86 and the cottonwoods together at $356.08. Its estimate was based on size, species, location, and condition using "the International Society of Arboriculure's [sic] guide `Valuation of Landscape Trees, Shrubs, and Other Plants[.]'"
[5] Although this assertion was made in the Dotsons' appellate brief, it is unsupported by the portion of the trial record to which they cited.