JOURNAL ENTRY and OPINION
This is an appeal from an order of Judge Janet R. Burnside granting summary judgment in favor of appellees Thriftco, Inc., Ehle Morrison Group, Ltd., (EMG), Bruce Morrison and Frank Schwartz on the trespass, breach of contract, civil conspiracy, and corrupt activity allegations of appellants Stedson R. McIntyre and the Bureau of Research, Inc. (BRI). They contend that material issue of facts are in dispute on all four of their claims. We do not agree and affirm.
The record discloses the following undisputed facts. McIntyre, a private investigator, is the president of BRI, an investigative service firm that now leases space on the 11th floor of the 75 Public Square building in Cleveland, Ohio. On September 20, 1991, McIntyre, on behalf of BRI, executed a lease for space on the 13th floor which expired on October 30, 1996, after which BRI assumed a month-to-month tenancy.
Prior to the expiration of the 1991 lease, BRI began negotiating with the building owner for new office space on the 11th floor and, in a letter dated January 9, 1996, McIntyre was asked to review, sign, and notarize the addendum to the September 20, 1991 lease and return it with the signed proposed floor plans he had agreed upon. McIntyre claimed that he reviewed the addendum for the 11th floor lease, made some changes, and returned the copy to the owner who indicated that it had to forward the lease to Charter One Bank, its parent company, before returning his copy. McIntyre admitted, however, that there had been no agreement with his proposed alterations. He also claimed that he kept his copy of the January 8, 1996 proposed floor plans, which he approved on January 18, 1996, in the office computer room.
On May 1, 1996, six months before the expiration of BRI's 1991 lease, Thriftco assumed ownership of the building, retained EMG to manage the property, and EMG retained Schwartz to act as building manager. BRI then began negotiations with EMG to lease the new office space on the 11th floor of the building and continued to occupy its original space on the 13th floor. McIntyre claimed he continually called Charter One and Morrison, a principal of EMG, to find out when the 11th floor space would be ready for occupancy, and finally met with Morrison and Schwartz in the BRI computer room three or four times in July and August 1997. Morrison allegedly promised to begin work on the new suite as soon as other work was completed in the building. McIntyre said, however, that sometime in August 1997 he discovered that another tenant was negotiating with Morrison for BRI's proposed 11th floor space and also possessed signed blueprints for that area.
On September 3, 1997, while standing outside of the BRI computer room door, McIntyre allegedly noticed wood chips on the floor and, upon inspecting the lock, found that it had been jimmied. He checked the inventory, found nothing missing, and made a verbal report of the suspected break-in to the building security guard. He claimed that later that day he learned from Morrison that Schwartz had used a slim jim to jimmy the door.
Rachel Lipovec, a window washer who had been hired in the fall of 1997 to clean the inside and outside windows of 75 Public Square, averred that she had left a pole inside BRI computer room, returned early one morning to retrieve it and, upon discovering no one in the BRI suite, asked Schwartz to get the pole for her. Schwartz retrieved the pole, but Lipovec did not recall how he got into the computer room or whether another person was present at the time. Schwartz agreed that while he had the key to BRI's exterior doors, he did not have a key to the computer room because, unknown to him, McIntyre had changed the lock. He denied using a slim jim on the computer room door to retrieve Lipovec's pole but said that Ms. Lester Scott, a BRI associate, arrived and unlocked it for him. Ms. Scott confirmed the event and indicated that Schwartz had met her in the hall outside the office where he told her he already had been in the office but found the door to the computer room locked.
With a letter dated September 11, 1997, Morrison forwarded the proposal to renew the BRI lease, as it applied to the 11th floor suite, and requested McIntyre to [m]ake sure you review the plan (I have attached both a full size and reduced copy) and the general specifications. The general specifications included six items labeled EXTRA for different sections of the suite. These extra items were included at an additional cost to BRI's of $6,319.00.
McIntyre claimed he was surprised by the extras because they had been included — not marked as extras — in the original blueprints that he had approved in January 1996. He claimed to have taken the original signed plans to his home and discovered an altered floor plan in the computer room. This second, altered set labeled some of the items contained in the blueprints as extra which corresponded with the general specifications included with the September 11, 1997 letter. On September 15, 1997, BRI's attorney sent a letter to Morrison pointing out that the items listed as extra in the September 11 proposal had previously been included at no cost in the January 1996 proposal and blueprints agreed upon and approved by McIntyre.
McIntyre stated that Morrison dropped his demand that BRI pay for the extra items and, shortly thereafter, the parties signed a lease and BRI moved into the 11th floor offices. McIntyre admitted that neither he nor his business suffered any out-of-pocket costs or lost business as a result of the negotiation process.
On October 19, 1998, McIntyre and BRI filed suit against Thriftco Inc., Ehle Morrison Group, Ltd. (EMG), Bruce Morrison and Frank Schwartz claiming damages for trespass, conversion, fraud, beach of contract, civil conspiracy, and corrupt activity. On October 1, 1999, Thriftco, EMG, Morrison and Schwartz filed a joint motion for summary judgment which was opposed McIntyre and BRI. On December 28, 1999, McIntyre and BRI dismissed without prejudice their conversion and fraud claims. On March 2, 2000, the judge granted the motion for summary judgment with an opinion:
 The factual event which underlies all of the Plaintiffs' claims against the Defendants is that Defendant Frank Schwartz wrongfully entered a locked room of Plaintiffs' lease premises in the 75 Public Square office building. Defendant Thriftco is the landlord under that lease and the remaining Defendants are the management company, its agents and its employees who work for that landlord managing that office building. There is no factual evidence before this Court to establish that Frank Schwartz entered the locked door in an inner office space of the Plaintiffs other than in a lawful manner permitted by the parties' written lease. There is specifically no evidence to show that he gained entry by way of a slim jim or by otherwise jimmying the lock. The only person to suggest that method of entry was one who had no firsthand knowledge of the event and/or whose firsthand knowledge of such fact was not before the Court on summary judgment. All other accounts provided in the evidence before this Court on summary judgment established Schwartz's entry as being accomplished with a key and/or with the knowledge and consent of an employee or agent of the Plaintiffs. The extant lease provision between the Plaintiffs and Defendants, who stand in relationship to each other [as] tenant and landlord, expressly gives broad rights to the landlord and its agents and employees to enter the leased premises of Plaintiffs. There is no evidence to establish that the purpose for this particular entry fell outside the permissible reasons for entry set forth in the parties' written lease. There being no breach of the lease and specifically no event occurring such as Plaintiffs describe, there is no actual basis to support the trespass cause of action, the breach of lease cause of action, or the alternative theories of civil conspiracy and pattern of corrupt activity.
McIntyre and BRI raise a single assignment of error:
 THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT UPON THE COMPLAINT OF PLAINTIFF-APPELLANTS.
McIntyre and BRI contend that the question of whether Schwartz entered the computer room under false pretenses and with the intention of depositing altered blueprints that would have allowed EMG to charge extra for items previously included at no cost was a material fact in dispute. They also claim that Morrison immediately abandoned the claim for $6,319 because he knew he had been caught and could offer no reasonable explanation seeking payment for included items and never denied any discrepancy in the blueprints until after the law suit was filed. Moreover, they submit, it is apparent that all four defendants joined together in an effort to dupe McIntyre into believing that the blue prints he approved several months earlier required BRI to pay for the extra items and that all engaged in a pattern of corrupt activity.
In response, Thriftco, EMG, Morrison and Schwartz argue that any entry onto the property was specifically allowed by the terms of the lease and, therefore, cannot be the basis for a trespass or breach of contract claim. They also submit that, because of the lack of an underlying wrongful act, neither the civil conspiracy nor corrupt activity claims can stand and that the McIntyre's and BRI's lack of damages precludes recovery.
This court reviews the grant of summary judgment de novo, applying the same standard as that applied by the trial judge. Druso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131. A judge may grant a motion for summary judgment pursuant to Civ.R. 56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 369 N.E.2d 267,274; accord Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue, even though such damages may be insignificant. Linley v. DeMoss (1992),83 Ohio App.3d 594, 598, 615 N.E.2d 631, 633, citing 88 Ohio Jurisprudence 3d (1989) 579-581, Trespass, Sections 1-2; accord Abel v. Katz (1998), 83 Ohio St.3d 11, 19, 697 N.E.2d 600. An actor with a privilege to enter land who exercises that privilege in an unreasonable manner * * * is subject to liability for any harm to a legally protected interest of another caused by such unreasonable conduct.[1] Restatement of the Law, Torts (1965) 407, Section 214(1). If the actor exceeds the consent, the consent is not effective for the excess and he is not protected from liability for harm attributable to the excess. Restatement of the Law, Torts (1979) 364, Section 892A(4) Comment h.[2] [W]here the lawful entry upon land is used as a cover or cloak for the subsequent misconduct, and the entry is for the purpose of taking advantage of the privilege conferred by authority of law in order to commit another tort, the actor remains liable [for any harm to a legally protected interest of another]. * * * The subsequent misconduct is always to be considered as evidence bearing on the original intent. Restatement of Law, Torts (1965) 409, Section 214, at Comment f. If the actor has consent to enter the land for a proper purpose and he enters for that purpose but subsequently commits an unpermitted tort upon the premises, the actor becomes liable for the subsequent tort but not for the original entry. Restatement of the Law, Torts (1979) 369, Section 892A at Comment h.
Thriftco reserved a right of entry in the 1991 lease. McIntyre and BRI agree they assumed a month-to-month tenancy pursuant to the holdover clause contained in that agreement which subjected BRI to all the covenants and conditions contained in the lease. The rules and regulations section provides the following access by lessor clause:
 Lessor and its officers, agents, employees, licensees and representatives shall be entitled to have access to the premises on such occasions and to such extent as Lessor, in Lessor's discretion, shall deem necessary or appropriate for the proper performance of the duties and obligations required or contemplated to be performed or to be observed by Lessor hereunder. For such purposes, Lessor shall retain a key to the Premises, and Lessee shall not change the lock or place any additional locks on, or otherwise restrict or impede Lessor's access to, the Premises.
Thriftco and its agents held a privilege to enter the premises.
BRI and McIntyre essentially contend that Schwartz entered the 11th floor office in a manner exceeding the scope of consent to commit a tort or torts but fail to identify the civil wrong(s) other than to assert that defendants surreptitiously placed the proposed and altered 11th floor blueprints in the computer room with the intent that McIntyre rely upon them during the lease negotiations — something that McIntyre did not do. Construing this in a light most favorable to McIntyre and BRI, we cannot conclude that such conduct, in and of itself, constitutes a legally recognizable tort. In addition, taking as fact McIntyre's assertion that the wood chips outside the computer room door evince access by way of a slim jim and that Schwartz used a slim jim to gain access to the computer room, we cannot conclude that such entry was unreasonable given the contract proscription against the changing or addition of locks on the 13th floor premises. Summary judgment on the trespass claim was, therefore, appropriate.
With regard to the breach of contract and civil conspiracy claims, McIntyre and BRI have not sustained their burden of showing that a genuine issue of fact exists with regard to the damage element of both claims. Generally, a breach of contract action is pleaded by stating (1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration. American Sales, Inc. v. Boffo (1991), 71 Ohio App.3d 168;593 N.E.2d 316; citing Harper v. Miller (1957), 109 Ohio App. 269, 11 O.O.2d 17, 164 N.E.2d 754; Haefner v. First Natl. Bank (1942),70 Ohio App. 293, 25 O.O. 54, 44 N.E.2d 489. Damages also are a necessary element of a civil conspiracy claim: The tort of civil conspiracy is `a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. ' Williams v. Aetna Finance Co.(1998), 83 Ohio St.3d 464, 475,700 N.E.2d 859, quoting Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866, quoting LeFort v. Century 21-Maitland Realty Co.(1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640,645; Gosden v. Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481,496; Minarik v. Nagy (1963), 8 Ohio App.2d 194, 196, 93 Ohio L. Abs. 166, 168, 26 Ohio Op. 2d 359, 360, 193 N.E.2d 280, 281; accord Lang v. Drew Trimble-Webber, (Mar. 30, 2000), Cuyahoga App. No. 75692, unreported.
Because McIntyre admitted that neither he nor BRI sustained any damages as a result of the purportedly surreptitious placement of allegedly altered 11th floor blueprints, they could not withstand entry of summary judgment on their breach of contract and civil conspiracy claims.
The pattern of corrupt activity claim under R.C. 2923.31 et seq. fails for the same reason. McIntyre and BRI claim the conduct of Thriftco, Inc. EMG, Morrison and Schwartz falls within the proscriptions of R.C.2923.32(A)(1): No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt. A pattern of corrupt activity is defined as two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. R.C. 2923.31(E). Any person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct violated or allegedly violated section 2923.32 of the Revised Code or who conspired or allegedly conspired to violate that section * * *. R.C.2923.34(B). The aggrieved person may receive injunctive relief and triple the actual damages he sustains. R.C. 2923.34(E)-(F). To recover triple damages, the plaintiff shall prove the violation or conspiracy to violate that section and actual damages by clear and convincing evidence. Damages under this division may include, but are not limited to, competitive injury and injury distinct from the injury inflicted by corrupt activity.
McIntyre and BRI summarily contend that various acts constitute mail fraud, wire fraud, breaking and entering, and tampering with records. We need not consider whether the record supports their allegations that such acts constitute the asserted offenses because, even if we were determined that they had sustained their burden of coming forward with evidence showing corrupt activity as defined in R.C. 2923.31(I) and a pattern of that corrupt activity, McIntyre admitted that neither he nor BRI sustained damage as a result of such activity. Under the statute it is clear that a person must show actual damages in order to recover treble damages for injury due to a defendant's involvement in a pattern of corrupt activity. Summary judgment was appropriate on those claims.
It is ordered that the appellees cover of the appellants its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________ ANNE L. KILBANE, J.:
DIANE KARPINSKI, P.J. and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] [A]n unauthorized entry or intrusion into a tenant's property by a landlord constitutes a trespass to the same extent as would an entry or intrusion by a stranger, unless the landlord reserved a right of entry in the lease * * *. 88 Ohio Jurisprudence (1989), Trespass, Section 11, p. 589.
[2] A person who consents to another's conduct intended to invade his interests cannot recover in tort for the conduct or resulting harm. Restatement of the Law, Torts (1979) 364, Section 892A(1).